335 F.Supp. 1381 (1971)
David WILDERMAN, Plaintiff,
v.
Paul R. NELSON et al., Defendants.
No. 71 C 385(1).
United States District Court, E. D. Missouri, E. D.
December 17, 1971.
*1382 Louis Gilden, St. Louis, Mo., for plaintiff.
John C. Danforth, Atty. Gen. of Mo., Jefferson City, Mo., for defendants.

MEMORANDUM
MEREDITH, Chief Judge.
This matter is before the Court on defendants' motions, together with supporting memoranda and affidavits, to dismiss plaintiff's complaint, pursuant to Rule 12, F.R.Civ.P. Plaintiff has submitted memoranda and affidavits in opposition to defendants' motions to dismiss.
Plaintiff, formerly a probationary employee with the St. Louis City Office of the Missouri Division of Welfare, has filed a complaint in two counts against the various defendants, both individually and in their capacity with the State of Missouri. Plaintiff alleges that the defendants, acting under color of state law, deprived the plaintiff of his rights, privileges, and immunities secured by the Constitution and Laws of the United States. The gravamen of the complaint is that defendants discharged plaintiff from his position as a welfare caseworker for constitutionally impermissible reasons, namely, for exercising his right of free speech in writing a memorandum in response to a tardiness rule announced in an interoffice communication circulated among the St. Louis City Welfare Office staff. In Count I, plaintiff seeks equitable relief in the form of a writ of mandamus ordering his reinstatement in the Welfare Department, together with appropriate salary increases. In Count II, which realleges the substantive portion of Count I, plaintiff prays for actual damages in the amount of $50,000, and punitive damages in the amount of $50,000. This Court has jurisdiction under 42 U.S.C. § 1983.
With respect to plaintiff's claim that he was denied procedural due process of law in that he was not accorded a pre-termination hearing before his discharge, defendants contend that as a probationary employee, plaintiff was not entitled to such.
The United States Supreme Court has consistently held that whether such pretermination safeguards must be afforded is influenced by "the extent to which [the individual] may be `condemned to suffer grievous loss,'", Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970), quoting Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).
In the instant case, the rules of probationary employment with an agency of the State of Missouri clearly do not contemplate that the agency show cause before terminating the employment of a probationary employee. The responsibility for determining whether the probationer has served satisfactorily and is fit for permanent employment is left to the judgment and discretion of the appointing authority.
In Wilson v. Pleasant Hill School District, 334 F.Supp. 1197 (decided Mar. 1, 1971, W.D.Mo.), Judge Hunter held that a school teacher's right to pre-termination procedural due process is determined solely by state law. In the absence *1383 of a statute guaranteeing a teacher pre-termination procedural due process, failure of the state authority to afford such was not actionable under the civil rights statutes.
This Court has been faced with this issue in similar civil rights actions previously filed. In Long v. Board of Education, 331 F.Supp. 193 (E.D.Mo.1971), a suit brought by two probationary teachers, summarily dismissed pursuant to a similar probationary employment rule (section 168.221 RSMo, V.A.M.S.), Judge Regan held:
"School authorities have the right in their sole discretion to decide whether to employ or reemploy a probationary teacher for the next school year except only that the failure to reemploy must not be based on constitutionally impermissible grounds."
And in Harnett v. Ulett, 70 C 556(3) (decided July 15, 1971, E.D.Mo.), this Court construed the same statute as we are confronted with in the instant case (section 36.250, RSMo, V.A.M.S.). There, Judge Webster held that a probationary caseworker in a mental hospital who was summarily dismissed from employment, did not have a right to a pretermination hearing. These cases are in accord with Freeman v. Gould Special School District, 405 F.2d 1153, (8th Cir. 1969), which controls the instant case. There the Court of Appeals for the Eighth Circuit held that since Arkansas law provided for no procedures or machinery for school boards to conduct a hearing on complaints or on the hiring or rehiring of teachers, probationary teachers had no right to a pre-termination hearing. There, at page 1159, Judge Gibson stated:
"Many government employees are under civil service and some under tenure. Absent these security provisions a public employee has no right to continued public employment, except insofar as he may not be dismissed or failed to be rehired for impermissible constitutional reasons, such as race, religion, or the assertion of rights guaranteed by law or the Constitution."
At page 1160:
". . . [if such non-tenured employees were accorded pre-termination hearings] we would have little need of tenure or merit laws as there could only be, as argued by the plaintiffs, a discharge for cause, with the school board carrying the burden of showing that the discharge was for a permissible reason."
As the instant case does not reach the standard for a right to a pre-termination hearing as set forth in Goldberg v. Kelly, supra, in that summary dismissal did not condemn plaintiff to "suffer grievous loss", plaintiff was not entitled to a pre-termination hearing.
Although a plaintiff may not be entitled to a pre-termination hearing, it has generally been held that post hoc judicial consideration may be had where he can show that the dismissal or failure to reemploy is arbitrary, discriminatory, or results from reasons which place unreasonable and unconstitutional restrictions on the employment. Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Smith v. Board of Education, 365 F.2d 770 (8th Cir. 1966); Freeman v. Gould Special School District, supra; Bomar v. Keyes, 162 F.2d 136 (2nd Cir. 1947); Harnett v. Ulett, supra.
Plaintiff submits that he was dismissed from his employment for constitutionally impermissible reasons, namely, for exercising his right of free speech in writing the memorandum to defendant Nelson.
Regulation of constitutionally-protected freedoms, such as free speech, may be justified to prevent disruption of an activity which a state institution is charged by law with carrying out, or to prevent an impediment in the rendering of public services. Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968); Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. *1384 733, 21 L.Ed.2d 731 (1969); Harnett v. Ulett, supra.
Plaintiff as a probationary employee was susceptible to the proscriptions of the Missouri State Merit System. Section 36.250, RSMo 1969, V.A. M.S., specifically provides that:
"At any time during the probationary period the appointing authority may remove an employee if, in the opinion of the appointing authority, the working test indicates that such employee is unable or unwilling to perform the duties of the position satisfactorily, or that his habits and dependability do not merit his continuance in the service."
This law does not require the appointing authority to show cause for dismissal, but is rather a discretionary function.
Plaintiff was also amenable to the Personnel Advisory Board's Rules and Regulations, prescribed by section 36.070, RSMo 1969, V.A.M.S. Rule 10 of that section provides for a working test. One of the four areas in which a probationary employee is evaluated and the one in which plaintiff failed to make a satisfactory grade, necessitating his dismissal, is work attitude. Plaintiff submits that the sole reason he was re-evaluated, causing his failure to pass in the area of work attitude and resulting in his dismissal was the memorandum written by him to defendant Nelson. Defendants submit that the dismissal was made in good faith and there was no objection to plaintiff's writing the memorandum. Defendant Nelson does not dispute that comments were invited from the employees and points out the fact that other employees expressed their dissatisfaction with the tardiness rule. However, defendants submit that plaintiff's dismissal was based on the fact that his expressed and admitted attitude toward the agency and its rules and regulations as disclosed by the substance of the memorandum and later revealed in the meeting on February 1, 1971, was negative to such an extent that he could not be an effective employee willing to work within the State Welfare System, and, thus, would make a poor risk for a permanent employee. It is the opinion of this Court that this is not really a material fact, because even if the defendants' determination and evaluation that plaintiff had a negative attitude which would prevent him from being an effective employee was based solely on what plaintiff's memorandum disclosed, defendants would not have acted without a basis in fact. An examination of the following portion of plaintiff's memorandum would clearly indicate that defendants have not violated their discretionary function and duty.
"`Working through the system' is a favorite catch-phrase for administrators of bureacracies who are embarrassed by their helplessness, by their supposed inability to alter the present circumstances. They are helpless because of their fear, fear of violating the `holy' manual, fear of embarassing their superiors by rocking the boat, fear for their jobs and even more, fear of losing their security which depends on being as efficiently and articulately unoriginal as possible.
"All together, its the `system', the `corporate system' or whatever you wish to call it. It deprives its victims of privacy, initiative, individuality and satisfaction in one's work. It's rotten and you ought to know it is. If it were effective (in our case) in providing services and support to the poor it might be acceptable, but it is even more ineffective than it is rotten. You ought to admit it and mitigate its excesses locally. You can do that by blinking at the latest `WORD' from State Office."
As defendants' evaluation of plaintiff was a discretionary decision, it is not an unconstitutional violation of discretion unless it can clearly be said that it is arbitrary, unreasonable, or capricious. That cannot be said here.
It is not unreasonable for defendants to have decided that plaintiff's attitude *1385 indicated a willingness to impede the proper performance of his duties or to interfere with the regular operation of the agency. The State, as an employer, has a legitimate governmental interest in promoting the efficiency of the public services it performs through its employees. Its evaluation of probationary employees in such a manner so as to provide for the most qualified permanent employees, absent an abuse of discretion, is reasonably related to that interest.
In Pickering v. Board of Education, supra, 391 U.S. at 568, 88 S.Ct. at 1734, 1735, the United States Supreme Court set out a guideline when the interest of the state as an employer clashes with that of the individual employee.
"The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."
In applying the above standard to the facts of this case, it is the opinion of this Court that the interest of the state as an employer and the duty of the defendants to evaluate probationary personnel in an attempt to find competent and efficient permanent employees and dismiss those who had the acknowledged intention to work against rather than for its efficient operation, absent an abuse of discretion, overcame the plaintiff's right of free speech. Therefore, plaintiff was not discharged for constitutionally impermissible reasons and, thus, has not been deprived by the defendants of any of his federally-protected rights.
Rule 12(b) (6), F.R.Civ.P., provides that a motion to dismiss for failure to state a claim upon which relief can be granted is to be converted into a motion for summary judgment whenever matters outside the pleadings are presented to and accepted by the Court. As there is no genuine issue as to any material fact and defendants are entitled to judgment as a matter of law on both counts, summary judgment will be granted for the defendants and against the plaintiff.