David WILDERMAN, Plaintiff-Appellant,

v.

Paul R. NELSON et al., Defendants-Appellees.

No. 72-1005.

United States Court of Appeals,
Eighth Circuit.

Submitted May 11, 1972.

Decided Oct. 4, 1972.

Louis Gilden, St. Louis, Mo., for appellant.

Kermit W. Almstedt, Asst. Atty. Gen., John C. Danforth, Atty. Gen., Jefferson City, for appellees.

Before VOGEL, LAY, and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

David Wilderman brought this action under 42 U.S.C. § 1983, seeking reinstatement as a welfare caseworker for the Missouri Division of Public Wel-

fare and damages against his former superiors and supervisors in the welfare division. In response to defendants' motion the district court granted summary judgment dismissing the action. Wilderman v. Nelson, 335 F.Supp. 1381 (E.D. Mo.1971). Wilderman prosecutes this timely appeal. We apply principles enunciated by the Supreme Court in two cases decided since the district court rendered its decision here, Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and reverse and remand this case for trial on the merits.

We briefly summarize the facts disclosed by affidavits filed by the parties as support for or in opposition to the motion for dismissal in the district court. Wilderman served as a caseworker at the city welfare office in St. Louis, Missouri, from August 31, 1970, until his dismissal on February 5, 1971. During this period of time his status was that of an untenured or probationary employee subject to discharge if at any time his job performance were to indicate to his superiors that he was "unable or unwilling to perform the duties of the position satisfactorily, or that his habits and dependability [did] not merit his continuance in the service." [1] Mo.Ann.Stat. § 36.250 (1969).

The following sequence of events preceded Wilderman's dismissal. On January 7, 1971, Wilderman handed a handwritten memorandum to appellee, Paul R. Nelson, director of the welfare office at St. Louis, in which Wilderman vigorously protested a recent regulation governing employee tardiness. This regulation directed that an employee of the welfare division lose two hours of vacation time for each tardiness in reporting for work. In his memorandum, in addition to attacking the adequacy of the division's service to its clientele, Wilderman characterized this regulation as "arbitrary" and "absurd" and asked that his superiors "mitigate its excesses" by "blinking at the latest 'word' from State Office."

Director Nelson felt that Wilderman's message evidenced a negative attitude toward the welfare division. He requested that Wilderman meet with him and other intermediate supervisors of the St. Louis office. Wilderman attended such a meeting on February 1, 1971. The supervisors at this meeting inquired into Wilderman's attitude toward his work. According to Nelson, Wilderman stated he would not support division policy in talking to welfare clients. Wilderman, in his affidavit filed in this action, denied Nelson's statement and asserted that he had made no remarks disparaging of his employer.

Following this meeting, Nelson reduced a favorable work-attitude rating of 20 percent received by Wilderman from his immediate supervisors to 16 percent (unsatisfactory), thus providing a basis for dismissal under the merit system standards applicable to state employees. He recommended to the Missouri State Welfare Division that Wilderman's employment be terminated. This recommendation was accepted. On February 9th, Wilderman received an official letter advising him of his dismissal effective February 11, 1971. The letter stated in part that the decision was "based on your attitude toward the agency and the administration of the St. Louis City Welfare Office."

Wilderman stated that at the time he received the dismissal letter he was told that he would be given the alternative of resigning. He claims that he accepted this alternative to avoid any unfavorable reflections on his employment record, but asserts that he was not permitted to resign. He charges further that Nelson, in a reference letter to a prospective employer, made false and mislead-

---

1. Appellees assert that regulations promulgated under this statute governed Wilderman's employment status and permitted his summary dismissal during a six-month probationary period. Appellant does not take issue with this assertion.

ing statements reflecting adversely upon Wilderman's loyalty to his employer.

That letter, signed by an assistant to Nelson but carrying Nelson's name, advised that Wilderman carried out agency policies with "much criticism" and that his termination resulted from his "inability to accept the rules and regulations of the agency within the structure in which he was working."

Wilderman here contends that the trial court erred in dismissing his complaint because the evidence produced by affidavits demonstrated Wilderman's entitlement to an administrative "due process" hearing before he could be discharged from state employment. He further charges that the record fails to demonstrate as a matter of law that his supervisors discharged him for a permissible reason rather than for his exercise of First Amendment rights.

In rejecting these contentions, the district court determined that Wilderman's probationary status operated to bar any right to a pretermination hearing. It further found that the State of Missouri properly exercised its discretionary power in dismissing Wilderman since he had an "acknowledged intention to work against rather than for [the] efficient operation [of the agency] * * *." *Wilderman, supra,* 335 F.Supp. at 1385. Appellant, in this appeal, challenges these rulings.

## I.

■ A nontenured state employee such as Wilderman is not entitled, as a matter of course, to notice of reasons for non-

retention in employment and a pretermination hearing thereon. *Roth, supra,* 408 U.S. at 572, 92 S.Ct. 2701.

■ The Fourteenth Amendment, however, compels a pretermination hearing for state employees holding contractual rights to continuing state employment under formal tenure programs as well as for employees having a cognizable property interest in continued employment on the basis of de facto tenure programs fostered by a state and relied upon by the employee. *Sindermann, supra,* 408 U.S. at 602, 92 S.Ct. 2694; *see* Harnett v. Ulett, 466 F.2d 113, 117 (8th Cir., 1972). The record in this case shows without dispute that Wilderman possessed neither formal nor informal tenure rights to continued employment which would constitute a property interest requiring the state to give him notice of charges and a hearing before dismissing him from employment.

■ A pretermination hearing is also required where there has been a denial of an interest in liberty protected by the Fourteenth Amendment. The Supreme Court in *Roth* alludes to circumstances which might compel a due process hearing for a state employee where, for example, the state charges an employee with dishonesty or immorality in a way which "might seriously damage his standing and associations in his community", or where the state in declining to reemploy an individual otherwise infringes on his liberty by "impos[ing] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities,"[2] *Roth, supra,* 408 U.S. at 573.

2. In *Roth,* the Court added:
   For "'[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'" Wisconsin v. Constantineau, 400 U.S. 433, 437, [91 S.Ct. 507, 510, 27 L.Ed.2d 515]; Wieman v. Updegraff, 344 U.S. 183, 191 [, 73 S.Ct. 215, 219, 97 L.Ed. 216]; Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123 [, 71 S. Ct. 624, 95 L.Ed. 817]; United States

v. Lovett, 328 U.S. 303, 316–317 [, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252]; Peters v. Hobby, 349 U.S. 331, 352 [, 75 S.Ct. 790, 801, 99 L.Ed. 1129] (concurring opinion). See Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 898 [, 81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230]. [*Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707.]
Additionally, the Court noted:
   The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a per-

The record here does not establish beyond doubt that the steps taken by the State of Missouri in discharging Wilderman did not infringe upon his liberty. The dismissal letter, stressing as a reason for discharge Wilderman's attitude "toward the agency and the administration," was filed in several state offices including those of personnel, welfare, and finance. As we have already noted, a reference letter sent by Director Nelson's office to a prospective employer commented adversely upon Wilderman's ability willingly to carry out his employer's policies. These letters may imply that Wilderman was disloyal to his superiors and thereby brand him as an undesirable employee. Wilderman's complaint and supporting affidavit suggest that he has had actual difficulty in finding alternative employment as a result of this poor recommendation.

In *Harnett, supra,* Judge Stephenson, writing for another panel of this court, interpreted the *Roth* decision as requiring due process protection upon a showing that "governmental conduct likely will * * * impose a stigma upon the employee that will foreclose future opportunities to practice his chosen profession * * *." 466 F.2d at 116. We agree with that interpretation of *Roth.*

■ The district court did not explore this facet of Wilderman's claim to protection under the Due Process Clause. The record here, though incomplete, contains evidence tending to show state action imposing a stigma upon Wilderman which may affect his future employment opportunities. Therefore, the district court was not justified in summarily dismissing Wilderman's complaint insofar as it alleged a right to a pretermination hearing.

## II.

■ We consider next the substantive allegation that the State of Missouri terminated Wilderman's employment in retaliation for his exercise of free speech in writing a letter critical of the Missouri State Welfare Office. We hold that the trial court erred in disposing of this issue summarily since the affidavits presented by the parties demonstrated a factual dispute. While Director Nelson's affidavit asserts that Wilderman admitted telling welfare clients that the Division of Welfare would not let him help them, and that he would not give full support to the Department when talking to applicants for welfare assistance, we read Wilderman's affidavit as categorically denying these charges.[3]

The *Sindermann* case teaches that the existence of a tenure "right" is immaterial to a claim of dismissal in retaliation for a state employee's exercise of his constitutionally protected right of free speech, and, further, that where there is a genuine dispute regarding such a free-speech claim, summary judgment, without full exploration of this issue, is improper. *Sindermann, supra,* 408 U.S. at 597, 92 S.Ct. 2694.

We, therefore, remand this case for further consideration of this substantive question in addition to the procedural issue raised. If this First Amendment question is reached,[4] the district court,

son has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons. [*Id.* at 573, n.12, 92 S.Ct. at 2707.]

3. Wilderman in his affidavit states:
Never at any time during a phone conversation with a client nor in a personal interview did I ever say that "I would like to help you, but they [referring to the Division of Welfare] won't let me." Never at any time did I make any similar remark.

4. In *Roth,* the district court, when faced with a similar due process claim of a former state employee, first resolved that issue and directed the state to give the employee an appropriate hearing. The trial court deemed it appropriate to defer consideration of the substantive question pending disposition of the procedural claim. Roth v. Board of Regents of State Colleges, 310 F.Supp. 972, 983 (W.D.Wisc.1970), aff'd, 446 F.2d 806 (7th Cir. 1971), rev'd on other grounds, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

following trial on the merits, should make a specific finding whether the decision to terminate Wilderman's employment "was, in fact, made in retaliation for his exercise of the constitutional right of free speech." [5] *Sindermann, supra,* 408 U.S. at 598, 92 S.Ct. at 2698.

Reversed and remanded.

5. In this regard, we deem the following comment to be instructive:

There is sometimes a conflict between a claim for First Amendment protection and the need for orderly administration of the school system, as we noted in Pickering v. Board of Education, 391 U.S. 563, 569, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811. That is one reason why summary judgments in this class of cases are seldom appropriate. Another reason is that careful factfinding is often necessary to know whether the given reason for nonrenewal of a teacher's contract is the real reason or a feigned one. [Roth, supra, 408 U.S. at 583, 92 S.Ct. at 2712 (Douglas, J., dissenting).]