Gary A. WELLNER, Appellee,

v.

**MINNESOTA STATE JUNIOR COLLEGE BOARD, Appellant.**

No. 73–1131.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1973.

Decided Oct. 23, 1973.

Rehearing Denied Dec. 7, 1973.

Theodore N. May, Sp. Asst. Atty. Gen., St. Paul, Minn., for appellant.

Clinton J. Hall, St. Paul, Minn., for appellee.

Before HEANEY, STEPHENSON and WEBSTER, Circuit Judges.

STEPHENSON, Circuit Judge.

Minnesota State Junior College Board (the Board) appeals following an adverse final order in a 42 U.S.C. § 1983 action brought against the Board by Gary A. Wellner, a nontenured faculty member of Metropolitan State Junior College (Metro). Wellner alleged that he was deprived of procedural due process since the Board did not afford him a hearing prior to its decision not to reappoint him as a Metro faculty member. The trial court in an unreported opinion, held that certain "racist" charges made against Wellner, which were placed in his file, and the attendant stigma involved in the Board's failure to reappoint him constituted "a deprivation of his interest in liberty," within the meaning of Board of Regents of State Colleges et al. v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); and that Wellner therefore was entitled to a prior hearing.[1]

The trial court determined at the time it rendered its order that "a hearing held now could not adequately reflect the actual circumstances surrounding the making of the racist charges against plaintiff and the decision not to reap-

---

1. The trial court noted that both parties agreed that the case would be controlled by the *Roth* and *Sindermann* decisions. We therefore do not reach the question of the retrospective operation of those holdings. *See generally,* Chevron Oil Co. v. Huson, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).

point him for the 1971–1972 year." It therefore assessed back pay against the Board; ordered the Board to appoint Wellner at the beginning of the next quarter or semester to a position of equal rank, responsibility and salary to that which he held at Metro during the 1970–1971 academic year, but at a Minnesota State Junior College other than Metro because of the "tensions and problems which would result from him working there;" and further ordered the Board to expunge from its records all matter relating to Wellner's "actions or attitudes toward black people which indicate that he holds a bias or prejudice against them."

We affirm in part and reverse in part and remand this cause with directions.

In its opinion and order the trial court found: that Minnesota Stat.Ann. § 136.-62 (1967) authorizes Metro to appoint, reappoint and not reappoint nontenured faculty members without giving reasons or affording a hearing; that Dr. Robert W. Jensen, Metro's president, appointed Wellner to the Metro faculty during the 1969–1970 academic year as a physical education instructor and wrestling coach; that pursuant to the recommendation of the Faculty Review Committee (Committee), Dr. Jensen reappointed Wellner for the next academic year; that although Wellner applied for the position of permanent athletic director, Dean of Students, Dr. James P. Lund, appointed an outsider, Grover Garvin; that Wellner was heavily burdened with extra work, which he was forced to assume in order to keep his job; that problems arose during the 1970–1971 academic year between Wellner and other faculty members, which triggered Dr. Lund to recommend to Dr. Jensen in writing that Wellner not be reappointed "because of 'lack of cooperation and the ill feelings that have developed in the Athletic Department as a result of Mr. Wellner's attitude and actions;'" that other anti-Wellner material was gathered by Dr. Lund and placed in Wellner's file at Metro which charged Wellner with having a hatred toward blacks; that during the same period the Committee recommended to Dr. Jensen that Wellner be reappointed; that Dr. Lund in a memorandum to Dr. Jensen, recommended to the contrary; and that Dr. Jensen decided not to reappoint Wellner.

The trial court concluded that the accusations contained in the adverse memoranda were without foundation in fact, and that "[t]hey consist of conclusions and mental impressions which are readily explainable when one considers that they were made at the direction of Dr. Lund" who was the superior of the authors of the memoranda. Insofar as the racist charges were concerned, the trial court found that there was no evidence of any kind to sustain or lend veracity to such charges. It determined that "[t]he evidence shows that the presence of the written racist charges in [Wellner's] file at Metro clearly reduces and diminishes his chances to obtain another teaching position since it is likely that his prospective employers will have access to such file."

The principal question presented by this appeal is whether the record supports the trial court's determination that Wellner had been deprived of an interest in liberty entitling him to a hearing pursuant to the dictates of *Roth* and *Sindermann, supra.*

In Harnett v. Ulett, 466 F.2d 113, 116 (8th Cir. 1972), we interpreted *Roth* as determining "that absent some sort of statutory tenure or contractual rights, a public employee has no interest cognizable at law necessitating due process protection unless a showing is made that the government conduct likely will . . . impose a stigma upon the employee that will foreclose future opportunities to practice his chosen profession." *Accord,* Wilderman v. Nelson, 467 F.2d 1173, 1176 (8th Cir. 1972).

Both *Roth* and *Sindermann* subscribe to the view that although a person may have "no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may

not rely." *Sindermann, supra,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). " '[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' " *Roth, supra,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

■ This case was tried to the court sitting without a jury. The scope of our review is therefore limited to whether the findings made by the trial court are clearly erroneous. Fed.R.Civ. 52 (a); *see* Brown v. Scott, 454 F.2d 693, 694 (8th Cir. 1972). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); Arkansas Ed. Ass'n v. Bd. of Ed., Portland Ark. Sch. Dist., 446 F.2d 763, 770 (8th Cir. 1971).

The record discloses that subsequent to its decision to recommend reappointment, the Faculty Review Committee received written anti-Wellner memoranda from Dr. Lund, together with written charges of racism from the Black Student Union. Additional material adverse to Wellner had been collected by Dr. Lund from Garvin and Gardner, along with a letter addressed to Lund from the Black Student Union Basketball Team, which contained more racist charges. Dr. Lund placed the material into Wellner's activity file which ultimately came into Dr. Jensen's custody. Despite this new information, the Committee adhered to its original recommendation. Dr. Jensen nevertheless refused to follow the Committee's suggested action and informed Wellner in writing that he would not be reappointed. Dr. Jensen testified that Well-

ner's requested review of the decision was denied and that the decision would stand without a hearing.

■ Our examination of this record convinces us that no mistake has been made. *See,* United States v. United States Gypsum Co., *supra,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). There is ample evidence to support the trial court's finding that the presence of racist charges against Wellner were the principal cause of his non-reappointment and this deprived Wellner of an interest in liberty which entitled him to a prior hearing, despite his nontenured status.

■ We turn then to the nature of the trial court's remedy. We agree with that portion of its order which in effect states that Wellner is entitled to receive the salary he would have received had he been reappointed, unless and until he is lawfully discharged.[2] We also agree with that portion of the trial court's order which directs the Board to expunge from its records all written matter which indicates that Wellner holds a bias or prejudice toward blacks.[3] However, the trial court erred when it determined not to order a hearing and instead ordered the board to reappoint Wellner to a similar teaching position. As we noted earlier, the trial court reasoned that "a hearing held now could not adequately reflect the actual circumstances surrounding the making of the racist charges."

We acknowledge that this latter point is troublesome. Nevertheless, we are governed by *Roth* and *Sindermann* which dictate that upon the requisite showing of deprivation of an interest in liberty the appropriate remedy is a hearing ordered by the trial court. That is, in such a case due process requires that a party be given notice of the charges against him and a reasonable chance to be heard.

2. The Board, of course, may terminate its liability for salary without employment by reinstatement.

3. The Board has made it clear that such material is not the basis for its appeal and would

therefore be irrelevant in any subsequent hearing except as required by Wellner in clearing his name. The trial court's remedy is justified by the potential of such material for future damage and the Board's lack of procedure for removing it from Wellner's file.

The Supreme Court in *Roth, supra,* 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12 observed:

> "The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons."

We deem it inappropriate in this case to do more than follow the requirement. The trial court chose to go further and erred in so doing.

The final order of the trial court is therefore affirmed in part and reversed in part. We affirm that portion of the order requiring the Board to compensate Wellner for lost wages and to expunge from its records the material adverse to Wellner. We also affirm the assessment of costs against the Board, not including attorney's fees. We reverse that portion of the order which directs Wellner to be reemployed. The cause is remanded to the trial court with directions to order an administrative hearing before the Board in accordance with due process requirements as noted in this opinion.

Affirmed in part; reversed in part and remanded with directions.

On Petition For Rehearing.

PER CURIAM:

Petition for rehearing is denied.

■ Wellner was improperly discharged because he was not accorded an appropriate hearing. His termination was therefore a nullity and he remains on the payroll until a proper hearing is held, at which time he may be retained or not reappointed. It is not within our province to speculate that after a proper hearing clearing his reputation the Board will recommend that Wellner not be reappointed, or that the appropriate official will not reappoint him to a similar teaching position. In any event, Wellner remains on the payroll and is entitled to receive the wages he will have earned until his name is cleared by prop-

er Board action and the decision is properly made with respect to whether he will be reappointed. However, any award shall be reduced by interim earnings he may have derived from other employment.