**Dr. Wayne SMITH, Plaintiff,**

v.

**CLEBURNE COUNTY HOSPITAL, Sam B. Rector, Individually and as Administrator of the Cleburne County Hospital; the Board of Governors—V.H. Dickson, Chairman, County Judge Delane Wright, Ex-Officio Member, Larry Crabtree, Secretary, D.E. Barnett, Thomas Whitaker, J.M. Stuart, B.J. McNair, Oscar Patchell, Rodney A. Peterson, Don Verser, Charles Evans, Elaine Ellibee, Millard Fletcher, Loreen Houston, Vernon H. Wold, Wincle Forest, Roger Morin and Glenwood B. Achorn, Members—and the Medical Staff consisting of Doctors William M. Wells, Michael E. Barnett, Max Baldridge, William H. Nevins, Nathan L. Poff, Donald H. McClanahan, Harrol L. Cranford, Joe B. Scruggs, Robert Clark, Steve Blackburn, Jim Ashabramer, Robert R. Wilson and H.C. Williams, Defendants.**

**No. B–C–77–49.**

United States District Court,
E.D. Arkansas, W.D.

Aug. 10, 1987.

John Lavey, Little Rock, Ark., for plaintiff.

David L. Williams, Rose Law Firm, Frank J. Willis, III, Barber Law Firm, Walter Paulson, Friday, Eldredge & Clark, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

On February 14, 1985, this Court found that plaintiff's medical staff privileges at the Cleburne County Hospital were revoked because plaintiff publicly criticized the patient care afforded patrons at the hospital; that the criticism was protected conduct under the First and Fourteenth Amendments to the United States Constitution; and that defendants had failed to demonstrate that plaintiff's staff privileges

would have been revoked even in the absence of the exercise of the protected conduct. The parties were afforded an opportunity to agree on the relief to be afforded plaintiff, but were unable to do so. Accordingly, in March, 1986, the Court conducted a hearing regarding the relief to be afforded[1]. The parties have submitted briefs, proposed findings of fact and conclusions of law in support of their respective positions. After carefully considering the evidence and argument of counsel, the Court now makes the following rulings:

### I.

### THE FEBRUARY 14, 1985 OPINION AND ORDER ARE AMENDED

#### A. QUALIFIED IMMUNITY:

■ Defendants have argued, in their briefs, that this Court did not address the affirmative defense of qualified immunity, asserted by defendants, in its Opinion and Order of February 14, 1985. On the other hand, plaintiff argues that while the Court did not make a specific finding that defendants had forfeited their qualified immunity, it is clear that such a finding was "expressly implicit in its findings that defendants were liable to Dr. Smith." In any event, the Court, in an effort to alleviate any uncertainty or to put the matter to rest, holds that defendants, as hereinafter identified, knew or should have reasonably known that the action they took on February 22, 1977, and subsequently thereto, resulting in the termination of plaintiff's medical staff privileges at the Cleburne County Hospital, because of plaintiff's public criticism of the standard of patient care at the hospital, would violate rights clearly secured under the First and Fourteenth Amendments to the United States Constitution. *See, Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).[2] Surely, as plaintiff's

---

1. By agreement of counsel, the issues were bifucated. The order of the Court of February 14, 1985, dealt exclusively with the question of liability. See, *Smith v. Cleburne County Hospital,* 607 F.Supp. 919.

2. Whether an official's claim of qualif ied immunity is a viable defense is a question of law as opposed to one in fact. *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985).

counsel argues, the principle enunciated by the Supreme Court in *Pickering* had been "well cystalized" by February 22, 1977. *See also: Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) where the Supreme Court observed: "For at least a quarter-century, this Court has made it clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him benefit for any number of reasons ... it may not deny a benefit ... on a basis that infringes his constitutional protected interests—especially, his interest in freedom of speech."; *Wilderman v. Nelson,* 467 F.2d 1173 (8th Cir.1972) "... [T]he existence of a tenure 'right' is immaterial to a claim of dismissal in retaliation for a state employee's exercise of his constitutionally protected right of free speech ..."); *Gieringer v. Center School District No. 58,* 477 F.2d 1164 (8th Cir.), *cert. denied,* 414 U.S. 832, 94 S.Ct. 165, 38 L.Ed.2d 66 (1973) (a teacher's report to teacher's association which did not appear to be a deliberate attempt to deceive or frustrate the district's operations was "constitutionally protected activity and dismissal was impermissible"); *Birdwell v. Hazelwood School District,* 491 F.2d 490 (8th Cir.1974) (teacher retains right as a citizen to comment on matters of public concern and to the degree that such comment is substantially accurate, it provides no basis for dismissal).

This Court is also persuaded that the evidence supports a finding that defendants lacked good faith in pursuing the course of conduct resulting in the revocation of Dr. Smith's medical staff privileges. *See, Clark v. Beville,* 730 F.2d 739 (11th Cir.1984).

### B. ADDITIONAL DEFENDANTS:

The following designated individuals were inadvertently omitted as defendants in this Court's Memorandum Opinion and Order of February 14, 1985, and, therefore, are designated now: Sam B. Rector, individually and as the Administrator of the Cleburne County Hospital; Rodney A. Peterson, Don Verser, Charles Evans, Elaine Ellibee, Millard Fletcher, Loreen Houston, Wincle Forest, Roger Morin and Vernon H. Wold, as members of Cleburne County Hospital Board of Governors. However pursuant to court order, this action has been dismissed as to defendants Dr. William H. Nevins, Delaine Wright, Don Verser, J.M. Stuart and Glenwood B. Achorn.

In addition, it is conceded that the following defendants are not liable for any alleged damages sustained by plaintiff, but are party defendants for any equitable relief that plaintiff may be entitled to: Rodney A. Peterson, Charles Evans, Wincle Forest and Roger Morin. The Court grants plaintiff's motion to substitute Jessie Faye Scruggs as executrix of the estate of Dr. Joe B. Scruggs as a party defendant. There is no opposition to the requested action.

### C. JOINTLY AND SEVERALLY LIABLE:

Defendants further contend that the Court did not specifically find in its February 14, 1985, Opinion and Order that defendants were jointly and severally liable to plaintiff and, therefore, if damages are awarded, such damages must be apportioned as to each defendant held liable in damages. On the other hand, plaintiff asserts that it is implicit in the findings of fact and conclusions of law that defendants are jointly and severally liable to plaintiff.

Again, in an effort to alleviate any uncertainty and place this issue at rest, the Court holds that defendants are jointly and severally liable to Dr. Smith for compensatory damages inasmuch as defendants, from February 22, 1977, to and including November 13, 1981, acted in concert to revoke the medical staff privileges of Dr. Smith in retaliation against him for engaging in protected First Amendment activity.[3]

---

**3.** The universal or general rule seems to be that all defendants need not act in concert in order to be liable as joint tortfeasors. Under this concept, tortfeasors acting independently are jointly liable when the independent acts of each work together to cause the damage sustained by plaintiff. While the Court is convinced that defendants acted in concert in the revocation of

## II.

### CLEBURNE COUNTY HOSPITAL

■ The Cleburne County Hospital is an entity owned and operated by Cleburne County, Arkansas, a local governmental entity, but is under the supervision and control of a Board of Governors pursuant to the statutory laws of the State of Arkansas. Among other things, as this Court found in its Memorandum Opinion and Order of February 14, 1985, the Board possesses the duty to "select and approve competent and qualified medical staff and *exercise general supervision over their duties and responsibilities;* and to approve the policies and recommendations of the medical staff." [4] (Emphasis added). However, the Court finds that it has been the custom and practice of the Board over the years to give approval automatically to the recommendations of the medical staff and the Joint Conference Committee without independent consideration or scrutiny. Hence, the recommendation of the medical staff of February 22, 1977, that the staff privileges of Dr. Smith be temporarily suspended and that a peer review of Dr. Smith's conduct be made by all physicians on the medical staff was in essence final and absolute. In other words, the medical staff was the alter ego of the Board. Thus, the action of the medical staff was in essence a "decision officially adopted and promulgated by the [Board]." *Monell v. New York City Department of Social Services,* 436 U.S. 658,

98 S.Ct. 2018, 56 L.Ed.2d 611 (See at 690–91, 98 S.Ct. at 2035–36) (1978); *Herrera v. Valentine,* 653 F.2d 1220 (8th Cir.1981). Dr. Smith knew this. This Court is persuaded that the medical staff not only knew that working conditions at the hospital for Dr. Smith under such circumstances would be difficult and intolerable, but intended to make conditions intolerable. It must be remembered that the February 22, 1977, resolution was approved unanimously by the individuals who would have input in any peer review of Dr. Smith.[5] Both V.H. Dickson, Chairman of the Board, and Sam Rector, Administrator, testified that the Board never rejected a recommendation from the medical staff regarding staff privileges at the hospital.[6]

Given the omissions of the Board over the years in assuming its responsibility to scrutinize the medical staff's recommendations and the Board's conscious and deliberate indifference to the deprivation of Dr. Smith's constitutional rights, by unanimously voting to reject Dr. Smith's application for staff privileges, which action was premised on the recommendation of the February 22, 1977, the Board's action was, in essence, a reaffirmation of the medical staff's action. Thus, the Cleburne County Hospital must respond also in any compensatory or nominal damages awarded under the teaching of *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[7]

---

plaintiff's staff privileges, the Court would encounter no difficulty, based on the evidence, in holding that the independent acts of each defendant proximately caused the damage sustained by plaintiff.

4. As previously found, the by-laws of the hospital authorize the Board to establish a Joint Conference Committee consisting of a chairman, vice chairman, secretary of the Board, the chief administrator—who is responsible for the management and day to day operation of the hospital—and the executive officers of the medical staff. The Joint Conference Committee is authorized to review recommendations and hear complaints from hospital personnel and staff physicians and submit to the Board recommendations on such matters.

5. The Court found in its Memorandum Opinion and Order of February 14, 1985, that Dr. Smith's withdrawal from activities at the hospital, fol-

lowing the adoption of the February 22, 1977, resolution by the medical staff, was involuntary and that plaintiff's privileges were constructively revoked in retaliation for engaging in a protected activity.

6. While this Court is of the view that the Board, as policy maker, has not exercised authority over the conduct of the medical staff and the Joint Conference Committee, consisting among others, of the Chief Administrator of the hospital and executive officers of the medical staff, and has delegated, in effect, that authority to the medical staff, the Court is also persuaded that the Board may be found liable for failure to adequately supervise and monitor the conduct of its subordinates.

7. This Court found in its Memorandum Opinion and Order of February 14, 1985, that defendants had failed to demonstrate, by a preponderance

### III.

### COMPENSATORY DAMAGES

Plaintiff argues vigorously that defendants' concerted conduct, commencing, as previously found, on February 22, 1977, resulting in the revocation of plaintiff's staff privileges at the Cleburne County Hospital, proximately caused the following damages sustained by plaintiff:

1. Loss of income from his medical practice in the sum of $1,004,953.30; and,

2. Mental anguish in the sum of $100,000; and,

3. Interest in Flying Wheels, Inc., a corporation, valued at $140,000.00 was lost pursuant to a foreclosure proceeding.[8]

The aggregate sum claimed as compensatory damages is $1,244,953.30.

■ After carefully scrutinizing the evidence and considering the argument of counsel, the Court holds that plaintiff has failed to establish with any degree of certainty that the alleged damages claimed were the proximate results of the conduct of defendants in retaliating against plaintiff for engaging in the exercise of free speech as secured under the Federal Constitution; and the Court is not persuaded that the alleged harm realized by Dr. Smith would not have occurred "but for" the defendants' wrongful and intentional conduct. In other words, there are numerous independent factors that could have played a role in producing the damages allegedly sustained; and for this Court to hold, either that the independent factors, as discussed hereafter, are irrelevant or that defendants' conduct was the proximate cause would require this Court to engage in speculation and conjecture as to causation of the asserted damages. For example:

1. The evidence reflects that during the fall of 1976, Dr. Smith recommended to his patients that they not make use of the Cleburne County Hospital. Dr. Smith also stated in the same communication, that he planned to resign from the medical staff and quit using the hospital.[9] In the absence of any evidence demonstrating that this communication had no material impact on the recipients' decision or other patients who heard about the communication to sever the

---

of the evidence, that Dr. Smith's medical staff privileges would have been revoked even in the absence of his exercise of First Amendment privileges. Defendants have urged this Court to reconsider its holding arguing, in effect, that defendants could have achieved the same result absent the protected conduct. The Court hastens to emphasize that defendants now, at this late stage of the proceeding, speculate or theorize that they could have invoked reasons to revoke plaintiff's staff privileges.

It must be remembered that on September 2, 1976, the medical staff recommended that Dr. Smith's staff privileges be renewed for the ensuing year, commencing October 1, 1976, and ending September 30, 1977. The Board of Governors accepted this recommendation on September 30, 1976. Surely, if plaintiff's behavior was so improper or disruptive to the general welfare of the operations of the Cleburne County Hospital, plaintiff would not have been approved for staff privileges for the 1976–77 term. Moreover, from October 1, 1972, to September 30, 1973, Dr. Smith served as Vice Chief of Staff of the hospital; and from October 1, 1973, to September 30, 1974, he served as Chief of the Medical Staff. This Court is still convinced, from a consideration of the evidence contained in the record as a whole, that plaintiff's staff privileges were revoked because he elected not to confine his criticism of the patient care offered by the Cleburne County Hospital "in house" as opposed to public utterances.

8. Plaintiff argues that he and his wife were the owners of 99 percent of the stock in a corporate venture known as "Flying Wheels"; and that because of the conduct of defendants, he was unable to take care of a second mortgage on corporate assets and lost $140,000.00 as a consequence of a foreclosure proceeding.

9. On January 26, 1977, Dr. Smith made the following public announcement:

It is with deep disappointment that I see this Board acting in a manner that is detrimental to this hospital and to the health and well-being of the citizens of this country. I have expressed my opinion to the Board and individual members in the past, so will not belabor the point now. I do wish to assure you and the people of this country that I have only just begun to fight. *I will not resign from the medical staff, and I will use every legal means that are available to me to insure that the hospital becomes a properly managed institution.* I still hope that this Board or Judge Wright will correct problems that exist. Believe me, they will be corrected—through legal action by civil suit if necessary. (Emphasis added).

patient-doctor relationship with plaintiff would place causation on an unverified supposition.

2. Dr. Smith entered the political race for the position of County Judge of Cleburne County in February, 1977. Aside from the likelihood of alienating friends as well as current and prospective patients because of his entry into the political arena, indeed, Dr. Smith could not devote the time and interest to his medical practice that he had devoted previously because of the time and energy that are generally required in a political campaign. There is absolutely no evidence in the record indicating whether this political venture of Dr. Smith's impacted either negatively or positively on his medical practice. However, given the fact that Dr. Smith lost the election, there is a strong inference that the voters of Cleburne County did not accept his credentials as being worthy of assuming the role as County Judge.

3. Dr. Smith indulged in an extra marital affair with one Judy Coffee, although he was married, which continued over a period of two years ending sometime in 1977. This relationship was widely known in a community that is part and parcel of the "Bible belt." There is no way that this Court or anyone else can say with any degree of accuracy that this illicit relationship did not have a negative effect on the plaintiff's medical practice.

4. Sometime during 1975, Dr. Smith withdrew from his church because of differences over alleged doctrinal matters. To conclude that a controversy which centered on religious tenets or articles of faith did not impinge his medical practice or affect his practice, on a silent record, would require speculation.

5. In 1974, plaintiff severed his relationship with the Heber Springs Country Club because of his apparent disagreement over a policy or practice of serving alcoholic beverages at the club. To conclude that plaintiff's strong and open stand in favor of abstinence from the use of alcoholic liquors at the country club did not affect his practice would also require speculation.

The aforementioned factors, which this Court characterizes as intervening factors that could have impacted either favorably or unfavorably on plaintiff's medical practice, depending, of course, on the views of his patients or prospective patients, are social issues which clearly have the potential of generating either extreme and uncritical enthusiasm for or extreme aversion and hostility to plaintiff. It must be remembered that plaintiff has the burden of proof to show the proximate cause of the damages sustained by a preponderance of the evidence.

## IV.

### MENTAL ANGUISH

Dr. Smith testified that he realized emotional distress and humiliation because of the revocation of his staff privileges as a consequence of the exercise of First Amendment rights. Defendants argue:

"Absent plaintiff's own testimony, there was no proof of mental anguish in the form of testimony from his current wife or other individuals who know him well."

.    .    .    .    .

"With such a thin record regarding mental anguish, any award of damages would be wholly speculative."

ɪn *Smith v. Anchor Bldg. Corp.*, 536 F.2d 231, 236 (8th Cir.1976), the Court of Appeals held that a plaintiff's own testimony may be solely sufficient to establish mental distress and embarrassment.

The evidence reflects that Dr. Smith commenced the general practice of medicine in July, 1968, in Cleburne County, Arkansas; and that the Cleburne County Hospital is the only hospital where plaintiff qualified for medical staff privileges. Since the action of the medical staff culminating in the revocation of Dr. Smith's staff privileges, Dr. Smith has been deprived of the association and fellowship with his peers at the hospital. Given the fact that the medical profession is a specialization in which the interchange of ideas and views are most beneficial, it is readily apparent to this Court that the loss of staff

privileges had a tremendous impact on plaintiff.

Moreover, the fact that defendants, and particularly the medical staff, deemed it necessary to revoke plaintiff's staff privileges and recommend a peer review of his performance at a time when the public's interest, regarding the services offered at the hospital, was at its apex, indeed, resulted in mental distress and great embarrassment to plaintiff.

After carefully considering the record in its entirety, this Court is persuaded that $15,000.00 is a reasonable figure to compensate plaintiff for mental distress. Accordingly, defendants are liable to Dr. Smith, jointly and severally, in the sum of $15,000.00 for mental distress.

## V.

## PUNITIVE DAMAGES

■ Punitive damages may be awarded in a Section 1983 proceeding. *Garrick v. City and County of Denver*, 652 F.2d 969 (10th Cir.1981); *Wilson v. Taylor*, 658 F.2d 1021 (5th Cir.1981); *Basista v. Weir*, 340 F.2d 74 (3rd Cir.1965) ("the availability of punitive damages in a § 1983 proceeding is governed by 'federal common law of damages' "); *Washington v. Official Court Stenographer*, 251 F.Supp. 945 (E.D.Pa. 1966); *Davis v. Board of Trustees of Arkansas A & M College*, 270 F.Supp. 528 (E.D.Ark.1967).

In *Davis, supra*, Judge Oren Harris observed:

An individual ... deprived [of his constitutional rights] is given a right of action at law. Such an action sounds in tort and exemplary or punitive damages may be awarded.

■ This Court is persuaded that members of the medical staff, even prior to the meeting of February 22, 1977, were determined to retaliate against Dr. Smith for discussing the problems at the hospital publicly. For example, Dr. Wells testified during the liability phase of this proceeding:

"... I think the reasons for this document [resolution of February 22, 1977]

began many weeks and months before the actual document was prepared and the degree of frustration that I felt, the degree of sadness that I felt at seeing a fine, working community institution being maligned when I could find no evidence of justification for this, *the accusation created in me a tremendous urgency and a sense of need to retaliate ...*". (Emphasis added)

Accordingly, the Court awards the following sums as punitive damages against the actual and responsible individuals for their malicious, willful, wanton and intentional action:

| | |
|---|---|
| Dr. Max Baldridge | $8,500.00 |
| Dr. Nathan L. Poff | $8,500.00 |
| Dr. William M. Wells | $8,500.00 |
| Dr. Michael E. Barnett | $8,500.00 |
| Estate of Dr. Scruggs | $8,500.00 |
| Dr. Steve Blackburn | $8,500.00 |
| Dr. Robert Earl Wilson | $8,500.00 |
| Dr. Harrol L. Cranford | $8,500.00 |
| Dr. H.C. Williams | $8,500.00 |
| Dr. Robert Clark | $8,500.00 |
| Dr. Donald H. McClanahan | $8,500.00 |
| Dr. Jim Ashabramer | $8,500.00 |
| V.H. Dickson | $1,000.00 |
| Larry Crabtree | $1,000.00 |
| D.E. Barnett | $1,000.00 |
| Thomas Whitaker | $1,000.00 |
| B.J. NcNair | $1,000.00 |
| Oscar Patchell | $1,000.00 |
| Elaine Ellibee | $1,000.00 |
| Millard Fletcher | $1,000.00 |
| Loreen Houston | $1,000.00 |
| Vernon H. Wold | $1,000.00 |
| Sam Rector | $1,000.00 |

■ The Court holds that Cleburne County Hospital, which is owned and operated by Cleburne County, a corporate entity, is immune from punitive damages in this § 1983 proceeding. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). This Court is not persuaded that the conduct resulting in the revocation of Dr. Smith's medical staff privileges is so "outrageous" as to justify a punitive sanction "upon the shoulders of blameless or unknowing [Cleburne County] taxpayers." 453 U.S. at 267, 101 S.Ct. at 2760, 69 L.Ed.2d at 632.

## VI.

## INJUNCTIVE RELIEF

■ This Court is persuaded that defendants should be directed to restore plain-

tiff's medical staff privileges at the Cleburne County Hospital, within a reasonable length of time after Dr. Smith has communicated his desire to be admitted to staff privileges, providing plaintiff meets the same objective standards applicable to physicians currently afforded staff privileges at the Hospital.

Dr. Smith argues that while he has kept current with relevant medical literature, he is not "now competent for hospital work and/or procedures and must be retrained for those purposes." Accordingly, Dr. Smith has requested this Court to require defendants to underwrite the cost of retraining. The Court, however, is not persuaded that plaintiff has demonstrated that he exercised a reasonable and good faith effort to maintain his "hospital skills" by, for example, enrolling in a continuing educational program or program offered by the University of Arkansas Medical Center or associating with some other hospital, state, county or federal, either on a full-time or part-time basis in an effort to mitigate any reduction in his skills. While it is plain that the burden of proof is on defendants to show that plaintiff has failed to mitigate damages, plaintiff was required to minimize his damages by the exercise of due diligence. Seemingly, Dr. Smith would not have been required to expend substantial sums of money to maintain his "hospital skills." Thus, the Court denies plaintiff's request that defendants be required to pay for cost of any retraining that might be required to qualify plaintiff for staff privileges.

In summary, the Court holds:

1. Dr. Smith has failed to establish by a preponderance of the evidence that defendants' conduct proximately caused the financial claims that he has asserted in this proceeding, because of the deprivation of his federal constitutional rights.

2. Plaintiff is awarded the sum of $15,000.00 for mental distress and embarrassment against defendants jointly and severally.

3. Because of the willful, malicious, wanton, reckless and conscious indifference manifested by the defendants re-garding the constitutional rights of Dr. Smith, the Court awards punitive damages, as indicated, in the sum of $113,-000.00.

4. Defendants are enjoined to readmit Dr. Smith to the Cleburne County Medical Staff within a reasonable time following any request on his part, providing that Dr. Smith meets objective standards that are currently in force and applicable to all physicians at the Cleburne County Hospital. If plaintiff elects to take a refresher course in order to improve his medical skills, he should be afforded a reasonable period after the completion of such program to apply for readmittance to the medical staff.

Counsel are afforded ten (10) days from the file-date of this Memorandum Opinion and Order in which to advise the Court of any issue submitted for adjudication which has not been considered in the memorandum.