**Barbara Jean BROWN, Plaintiff,**

v.

**Robert BATHKE et al., Defendants.**

**No. CV 75–0–194.**

United States District Court,
D. Nebraska.

July 30, 1976.

Clyde A. Christian, Omaha, Neb., for plaintiff.

Alex M. Clarke, Omaha, Neb., for defendants.

## MEMORANDUM OF DECISION

URBOM, Chief Judge.

Barbara Jean Brown seeks relief from action of the Board of Education of the School District of Omaha in terminating her contract as a teacher at Monroe Junior High School in Omaha. Trial was held on July 26 and 27, 1976, and this memorandum will contain the findings of fact and conclusions of law resting upon the presentations made at that trial.

Jurisdiction of the court properly is invoked under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983 to redress a claimed deprivation under color of state law of interests protected by the Constitution of the United States.

During the 1972–1973 school year the plaintiff held a valid teaching certificate from the State of Nebraska and was employed pursuant to § 79–1256, R.R.S.Neb. 1943, as a first-year probationary teacher by the School Board of Omaha by virtue of a teaching contract dated April 19, 1972. She was assigned to and was teaching at Monroe Junior High School during that school term.

On March 26, 1973, the board of education voted not to renew her contract for the ensuing school year, because the school administration had not received a copy of her college transcript, a requirement of which the plaintiff had been aware from at least July 10, 1972. She had arranged for the sending of the transcript and supposed it had been sent to the school administration. About March 28, 1973, she left with the administration her copy of her college transcript, but no action was taken by the board of education to renew her contract.

The plaintiff was a single woman. She became pregnant and by early April, 1973, had completed her seventh month of pregnancy. On or about April 3, 1973, Dr. Robert Bathke, principal at Monroe Junior High School, learned that the plaintiff was pregnant, and on or about April 4, 1973, he contacted the plaintiff and instructed her to write a letter to the Omaha board of education stating that she was pregnant and to ask her personal physician to write a letter confirming pregnancy, consistent with Rule 4.18 of the Policies and Regulations of the School District of Omaha in effect at that time. The plaintiff refused.

On April 6, 1973, Dr. Ronald Anderson, Assistant Superintendent of Staff Personnel Services of the school district, and Dr. Bathke scheduled a conference with the plaintiff and at the conference the plaintiff was informed by Dr. Anderson that either she would have to resign her position or Dr. Anderson probably would recommend that the board of education terminate her contract. The plaintiff responded that she wanted time to think about the possibility of resigning. No decision was made at that meeting by the plaintiff regarding resignation or by Dr. Anderson regarding any recommendation he would make to the board of education. At the meeting Dr. Anderson informed the plaintiff that she had a right to a hearing before the board of education and that the Omaha Education Association, of which she was a member, was available to her for providing guidance about her legal rights.

On April 11 Dr. Anderson asked the plaintiff by telephone whether she had made a decision about resigning and she

replied that she wanted more time to think. He answered that he would recommend to the board that her contract be cancelled effective April 10. On April 12 Dr. Anderson sent to the plaintiff a letter notifying her of his recommendation.

On May 7, 1973, the board at a regular meeting voted to terminate the plaintiff's employment effective April 10, 1973, because of her being pregnant and unwed. The plaintiff was not present at that meeting and had not been informed that it would be held. No request by the plaintiff for a hearing before the board was made prior to May 7, 1973. Charles Beattie, the secretary of the board, notified the plaintiff by letter on May 8, 1973, of the board's action. Although the minutes of the board meeting of May 7 and the notification to the plaintiff of May 8 speak in terms of the plaintiff's "resignation," she did not resign and the phrasing of the minutes and notice was prompted by a board policy to protect the teacher in such situations by attempting to avoid the publicity which might flow from language of termination appearing in a document, such as minutes, open to public inspection.

On July 10, 1973, the plaintiff filed a charge of discrimination with the Nebraska Equal Opportunity Commission. That commission, after a public hearing, found that there had been discrimination on the basis of sex. On review by the District Court of Douglas County, Nebraska, Judge John Burke remanded the cause with directions to the board of education to provide a hearing "on the issue of immorality consistent with principles of Due Process." A hearing, which the plaintiff attended with counsel, was held before the board on September 17, 1975. At the conclusion of the hearing the board confirmed its action of May 7, 1973, in terminating the plaintiff's contract. On review the District Court of Douglas County on February 26, 1976, reversed the Nebraska Equal Opportunity Commission's finding of sex discrimination. No appeal was taken, and the decision of the District Court of Douglas County has become final.

The issues as they are stated in headings I through VII of this memorandum are taken verbatim from the order on pretrial conference, which reflects both counsel's identification of the issues.

## I.

WHETHER PLAINTIFF WAS OFFERED A HEARING OR HAD A REASONABLE OPPORTUNITY FOR A HEARING OR REQUESTED AND WAS REFUSED A HEARING PRIOR TO ACTION BY THE BOARD OF EDUCATION ON MAY 7, 1973.

Factually, I conclude that the plaintiff was told that she had a right to a hearing, was not told that she would have to request a hearing before she would receive one, did not request one, and was not refused one prior to May 7, 1973. She was not informed of the date of the meeting of the board of education on May 7, 1973, and she did not waive any right that she had to a hearing.

■ Under state law, the plaintiff's contract gave her a property right in her employment for the school year 1972–1973, of which approximately two months remained at the time of her termination. That property right triggered the due process clause of the Fourteenth Amendment of the Constitution of the United States, and the defendants make no claim to the contrary. See *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2513, 33 L.Ed.2d 570 (1972); *Ahern v. Board of Education of School District of Grand Island*, 456 F.2d 399 (C.A. 8th Cir. 1972). The duty to provide due process is upon the state; it is not upon the employee to wrest it from the state. Accordingly, the failure of the state to give the plaintiff advance notice of the meeting of May 7, 1973, combined with the lack of the plaintiff's waiving of her right to a hearing, resulted in justification for Judge Burke's finding a need for a hearing before the board of education.

■ A review of the transcript of the 1975 hearing held by the board as a consequence of Judge Burke's order persuades me that that hearing afforded due process. No specific challenge to that hearing has

been made by the plaintiff, except that her counsel was unduly restricted by the board in his cross-examination of witnesses. The transcript of the hearing shows that the restriction of the cross-examination pertained only to the question of the evenhandedness of the board's use of its policies regarding discharge of employees for immorality. The questions the plaintiff's counsel wanted answered were essentially hypothetical. They sought to learn what would have happened if the facts had been different—if the plaintiff had had an abortion, for example. I think that the board did not deny the plaintiff due process by declining to hear such testimony.

## II.

### WHETHER THE PLAINTIFF HAD AN EXPECTANCY OF CONTINUED EMPLOYMENT BEYOND THE 1972–73 SCHOOL YEAR.

 The plaintiff was a first-year probationary teacher. As such, she was afforded no property right in her employment beyond the contract term by reason of the statutes of Nebraska. *Kibbon v. School District of Omaha*, 196 Neb. 293 (1976). Furthermore, no action or inaction of the board granted her any reasonable expectation of reemployment beyond the term of the contract. It is true that despite the board's having voted in March not to renew her contract for failure to provide a college transcript, the board probably would have renewed the contract by later action upon receipt of the transcript, except for the pregnancy. But the pregnancy cannot be made nonexistent. At the time of the board's terminating action on May 7, 1973, the plaintiff had no reasonable expectation of reemployment beyond the contract year—not merely because she was a probationary teacher but also because she was pregnant. Unless pregnancy in an unwed status is a constitutionally impermissible reason for nonrenewal, the board properly could use that reason. See *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2513, 33 L.Ed.2d 570 (1972); *Pickering v. Board of Education of Township High School District*

*205, Will County*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). As later developed in this memorandum, I conclude that it is not a constitutionally impermissible reason.

## III.

### WHETHER THE ACTION OF THE BOARD OF EDUCATION ON MAY 7, 1973, IN TERMINATING PLAINTIFF'S EMPLOYMENT EFFECTIVE APRIL 10, 1973, BORE A RATIONAL RELATIONSHIP TO ITS LEGITIMATE EDUCATIONAL FUNCTION.

 The evidence is persuasive that a junior high school teacher who develops a good relationship with the students is likely to be a model to those students in wide-ranging respects, including personal values. The plaintiff had developed such a relationship with the students. Many of them knew that she was not married; some of them by April, 1973, had observed that she probably was pregnant and some had asked her about it, but she had given them no definitive answer. Under those circumstances, the board of education was within the realm of propriety in considering that its permitting the plaintiff to continue to teach would be viewed by the students as a condonation by the plaintiff and the school board of pregnancy out of wedlock. There is a rational connection between the plaintiff's pregnancy out of wedlock and the school board's interest in conserving marital values, when acts probably destructive of those values are revealed, verbally or nonverbally, in the classroom. In *Adler v. Board of Education*, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952), the court said:

". . . A teacher works in a sensitive area in a schoolroom. There [s]he shapes the attitude of young minds toward the society in which they live. In this, the state has a vital concern. It must preserve the integrity of the schools. That the school authorities have the right and the duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of the schools as a part

of ordered society, cannot be doubted. . . . ."

## IV.

WHETHER OR NOT SECTION 79–1260(5), R.S.1943 WAS THE BASIS FOR PLAINTIFF'S TERMINATION EFFECTIVE APRIL 10, 1973, AND IF SO, WHETHER SAID STATUTE IS UNCONSTITUTIONAL [FOR ONE OR MORE OF SEVERAL ALLEGED REASONS].

█ Section 79–1260(5) permits cancellation of an "indefinite contract" for "immorality;" the section relates only to indefinite contracts. An indefinite contract is defined by § 79–1258 as the "contract issued the teacher in a fourth or fifth class school district [which includes the Omaha school district] at the time he accepts permanent status." An indefinite contract is thus distinguished from one given to teachers during their probationary period which, generally, is the first three school years of employment. See §§ 79–1256 and 79–1257. Accordingly, § 79–1260 provided no basis for cancellation of the plaintiff's probationary contract.

The testimony at the trial was that the school board's counsel reasoned—and the school board evidently followed his reasoning—that no Nebraska statute deals directly with the question of permissible grounds for cancellation of a probationary contract, but grounds for cancelling a probationary contract are probably no more restrictive than those for cancelling an indefinite contract, as set out in § 79–1260. In a sense, then, the board relied upon § 79–1260, but only in the sense of using it as an analogy or ceiling. Plaintiff's exhibits 1, 2 and 3, all of which are declarations by the school board's counsel, do not warrant a contrary finding.

Nevertheless, even if the board relied upon the wrong law—§ 79–1260, rather than the common law of Nebraska—that fact can offer no relief to the plaintiff. The correct question is whether the board complied with the applicable law, not whether it cited the inapplicable law. Because the applicable law is the common law of Nebraska, rather than § 79–1260, the constitutionality of the statute is immaterial.

## V.

WHETHER OR NOT THE DEFENDANTS' ACTION IN TERMINATING PLAINTIFF EFFECTIVE APRIL 10, 1973, UNLAWFULLY INVADED PLAINTIFF'S RIGHTS OF PRIVACY AND ASSOCIATION.

█ It is true that the constitutional right of personal privacy extends to abortion, contraception, procreation, family life and marriage. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). The plaintiff also has a constitutional right of association. *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). When the state takes some action which affects such constitutional rights, the issue is whether in balancing the interests involved—those of the school and those of the plaintiff—the intrusion into the plaintiff's rights is warranted. *Pickering v. Board of Education of Township High School District 205, Will County,* supra; *Birdwell v. Hazelwood School District,* 491 F.2d 490 (C.A. 8th Cir. 1974).

In *Adler v. Board of Education,* supra, the court said with respect to employment of teachers:

". . . One's associates, past and present, as well as one's conduct, may properly be considered in determining fitness and loyalty. From time immemorial, one's reputation has been determined in part by the company he keeps. In the employment of officials and teachers of the school system, the state may very properly inquire into the company they

keep, and we know of no rule, constitutional or otherwise, that prevents the state, when determining the fitness and loyalty of such persons, from considering the organizations and persons with whom they associate."

■ In balancing the interests, the court should give to the decision of the board of education substantial weight and should never lightly substitute its judgment for the judgment of the board. *Duke v. North Texas State University*, 469 F.2d 829 (C.A. 5th Cir. 1972).

■ Fully considered, I conclude that the interests of the plaintiff in determining her own familial relationships and associating with whom she chooses do not outweigh the interests of the school in providing the kind of teachers it chooses for imparting social values and educational subject matter to junior high school students.

## VI AND VII.

WHETHER OR NOT THE DEFENDANTS, OR ANY OF THEM, ARE ENTITLED TO IMMUNITY FOR ACTING IN GOOD FAITH AND IN THEIR OFFICIAL CAPACITIES, AND THE AMOUNT AND TYPE OF DAMAGES, IF ANY.

■ The test for liability of members of a school board with respect to student discipline is stated in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), as follows:

"Therefore, in the specific context of school discipline, we hold that a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student."

It appears to me that the same rule should be applicable with respect to a school board member's liability for damages under § 1983 regarding discharge of a teacher.

■ If my analysis of the issues is correct, there is no ground for recovery by the plaintiff, unless it be that specified in section I of this memorandum. The board's failure to provide a hearing of which the plaintiff had notice before termination, rather than after termination, may provide a basis for recovery of damages from the members of the school board, if they knew or reasonably should have known that failure to provide a pre-termination hearing would violate the constitutional rights of the plaintiff.

■ At most, damages arising from the failure to have such a hearing before, rather than after, the termination resulted in loss of income for about two months, which is the period of time remaining on her contract at the cancellation. She had no reasonable expectation of a renewed employment after that school year. That school year is now gone and reinstatement, therefore, would not be effective to regain lost salary and in any event should not be ordered for any year beyond the 1972–1973 school year, the discharge having been proper except for the ill timing of the hearing.

The evidence does not support any claim that the lack of a pre-termination hearing resulted in any humiliation or other mental damages.

Therefore, the questions of liability and damages come to this: Should the plaintiff be awarded damages against those individual defendants who were school board members at the time of the failure to give a pre-termination hearing, because they knew or reasonably should have known that failure to give a pre-termination hearing would be violative of the plaintiff's constitutional rights? The answer is in the negative, because the evidence is insufficient to show that the defendants knew or should have known that a failure to give such a hearing would deprive the plaintiff of due process. There is not the slightest indication that any of the defendants either maliciously or

carelessly failed to give a hearing before the termination.

There is no doubt that the defendants who were members of the board in May, 1973, knew that the plaintiff was entitled to a hearing. The plaintiff was told by Dr. Anderson that she was, and the United States Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 570, n. 7, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), had said squarely a year earlier that in dismissing a nontenured teacher during the contract term "except in emergency situations . . ., [the state] must afford 'notice and opportunity for hearing . . .' *before* the termination becomes effective." So, it must be said that the board members knew or should have known before May, 1973, that the plaintiff was probably entitled to a pre-termination hearing. But what they cannot be required to have known is that informing the plaintiff of her right to a hearing did not entitle them safely to assume that an absence of a request by her for a hearing relieved them of the duty of giving her one.

Dr. Anderson did not inform the plaintiff that she had a right to a hearing *if she were to request one*. Nothing in the evidence indicates that she thought she had to make a request. In those circumstances, I conclude that she did not waive her right to a pre-termination hearing and that the board members did not meet their requirement to provide such a hearing. Such a holding seems sensible to me when it is not shown that the teacher knew that a request was necessary. Stated another way, if a board puts a condition—the necessity of a request—upon a right to a hearing, it at least should let the teacher know of the condition.

Nonetheless, Dr. Anderson and the board members had no reason to know that in 1973. No court, as far as I can tell, had held that a school board had to give a hearing even in the absence of a request. Perhaps the nearest was a statement of mine in *Fielder v. Board of Education*, 346 F.Supp. 722, 730 (U.S.D.C.Neb.1972):

"Failure of the plaintiffs (students) or their counsel to ask for the presence [for cross-examination] of the teachers [at a post-expulsion hearing] makes no difference. The obligation to furnish due process is on the school board, not on the students."

That statement cannot be built into a basis for holding that the school board should have known that the burden was upon it to give a pre-termination hearing in the absence of a request where there is no evidence that the plaintiff was told or thought that a request was a prerequisite.

This is not a situation in which the defendants will be free to discharge teachers in the future with little or no regard to due process rights of those teachers. In assessing whether a particular school board's members are liable by either the subjective or objective standards set by *Wood v. Strickland*, supra, the state of the declared law at the time of the action by the board is critical. *Mukmuk v. Com'r of Dept. of Correctional Services*, 529 F.2d 272 (C.A. 2nd Cir. 1976). As each new case is resolved, the body of knowledge grows by which the school board members know or reasonably should know the constitutional rights of teachers. The performance of school boards must be measured against what reasonably is or should be known at any given moment.

I am persuaded that no damages should be awarded.

Some of the defendants were not members of the school board at the time of the cancellation of the plaintiff's contract. As to them—Al Bergman, Donald Cunningham and Ruth Thomas—it is obvious that judgment must be entered in their favor.

No evidence suggests that the defendants Robert Bathke, Owen Knutzen, or Ron Anderson (incorrectly shown in the complaint as Andersen) terminated the plaintiff's contract or had any power to do so. They were principal, superintendent and assistant superintendent, respectively, of the School District of Omaha. Motions of Bathke and Knutzen to dismiss at the end of the plaintiff's case were granted. No motion was

made at that time by the defendant Anderson, but it is apparent that for the same reason judgment must be entered for him.