**Barbara Jean BROWN, Appellant,**

v.

**Robert BATHKE, as Principal of Monroe Junior High School, et al., Appellees.**

No. 76–2073.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1977.

Decided Nov. 10, 1977.

Clyde A. Christian, Shrout, Christian, Krieger, Nestle & Palagi, Omaha, Neb., made argument, filed appearance and briefs for appellant.

Alex M. Clarke, Baird, Holm, McEachen, Pedersen, Hamann & Haggart, Omaha, Neb., made argument, filed appearance and brief for appellees.

Before MATTHES, Senior Circuit Judge, BRIGHT, Circuit Judge, and MILLER, Judge.[*]

BRIGHT, Circuit Judge.

Barbara Jean Brown, a former teacher at Monroe Junior High School in Omaha, Nebraska, brought this action against the principal of the school, the superintendent, the assistant superintendent, and the members of the Board of Education of the School District of Omaha to redress the termination of her teaching contract prior to the end of the school year, after the Board members discovered that Ms. Brown, a single woman, had become pregnant. She asserted a cause of action under 42 U.S.C. § 1983, claiming a deprivation of her constitutional rights under color of state law, and sought declaratory, injunctive, and other equitable relief and damages. Jurisdiction was invoked under 28 U.S.C. § 1331 and § 1343. The federal district court, in a decision reported at 416 F.Supp. 1194 (D.Neb.1976), denied Ms. Brown relief and she appeals. For reasons stated below, we hold that Ms. Brown was entitled to some relief, and we remand for further proceedings.

The Omaha Board of Education employed Barbara Jean Brown as a junior high school teacher under a one-year contract covering the full 1972–1973 school year. Ms. Brown's status was that of a probationary teacher, and the Board retained the prerogative of renewing or not renewing her contract at its option by voting to terminate the contract at any time prior to April 1 of any school year. Neb.Rev.Stat. § 79–1256 (1976).

In January 1973, the Board notified Ms. Brown that it had not yet received an official copy of her college transcript and that failure to provide one could result in nonrenewal of her contract. Because she had not furnished the transcript by March 26, 1973, when the Board voted on contract renewals for the following year, the Board omitted her name from the list of probationary teachers re-elected for the 1973–1974 school year and notified her, by letter dated March 27, 1973, that her employment would be terminated on June 8. Although she furnished the transcript a few days later, the Board did not reconsider its earlier action.

Dr. Robert Bathke, the principal of Monroe, learned from unidentified sources in April 1973, that Ms. Brown, a single woman, had become pregnant. In a conference on April 4, 1973, with Dr. Bathke and Dr. Ron Anderson, assistant superintendent for Staff Personnel Services, Ms. Brown confirmed her pregnancy, then in the seventh month. Dr. Anderson immediately suspended Ms. Brown with pay, pending a

---

[*] JACK R. MILLER, Judge, U. S. Court of Customs and Patent Appeals, sitting by designation.

decision by the Board of Education. Dr. Anderson told her she was entitled to a hearing, but failed to inform her that the hearing was contingent on her request. She made no request for a hearing.

At a regular meeting on May 7, 1973, the Board voted to terminate her employment effective April 10, 1973. Ms. Brown was not present at the meeting and had not been informed that it would be held.

On July 10, 1973, Ms. Brown filed a charge of sex discrimination with the Nebraska Equal Opportunity Commission (NEOC), which ruled in her favor after a public hearing. Upon appeal by the Board of Education, the District Court of Douglas County, Nebraska, ruled on August 13, 1975, that Ms. Brown had been denied a pre-termination hearing and remanded the cause to the Board directing it to provide a hearing for Ms. Brown. At the court-ordered hearing held on September 17, 1975, more than two years after her discharge, a psychiatrist and a professor of education testified that a teacher serves as a "role model" to her students and that students at an impressionable age may be highly influenced by the teacher's behavior and ideas. Following the hearing, the Board voted to confirm its earlier action terminating Ms. Brown's employment. Upon reconsideration of the cause following this hearing, the Douglas County District Court reversed the NEOC's finding of sex discrimination. Ms. Brown took no appeal to the Nebraska Supreme Court.

On May 23, 1975, Ms. Brown filed the present action in federal district court alleging that the defendants' conduct had deprived her of property without due process of law and of her rights to privacy and equal protection of the law. She also challenged, on the ground of vagueness, the constitutionality of Neb.Rev.Stat. § 79–1260(5) (1976), which was offered by the Board as its authority for terminating Ms. Brown's contract. That statute authorizes a school board to terminate the contract of a tenured teacher's contract for "immorality."

The federal district court in an unpublished opinion denied Ms. Brown relief, reaching the following conclusions: (1) that Ms. Brown possessed a property right in her employment during the term of her contract, triggering the Due Process Clause of the fourteenth amendment; (2) that the Board failed to provide her with a pre-termination hearing but cured any due process defects by providing a post-termination hearing; (3) that she possessed no reasonable expectation of employment and, therefore, no property right beyond the term of her contract; (4) that the Board's action bore a rational relationship to a legitimate educational function and therefore did not deny her equal protection of the law; (5) that the board's action did not unlawfully invade Ms. Brown's rights to privacy and association; and (6) that defendants, having acted in good faith, incurred no liability to Ms. Brown for any money damages for failure to afford her a pre-termination hearing. The district court also determined that the contract termination statute, section 79–1260(5), did not apply to a teacher with an untenured status. The district court, therefore, did not reach the constitutionality of that section of the Nebraska law.

On this appeal, appellant Brown renews her attack on that statute asserting that the Board relied on an unconstitutional statute in the discharge. She further contends that the Board's policy and action in discharging her violated her constitutional right to substantive due process by creating an irrebuttable presumption that unwed pregnancy constitutes immoral conduct, violated her right of personal privacy and equal protection, and constituted unlawful and unconstitutional discrimination based on her sex.

We agree with the district court that section 79–1260(5) is immaterial to the present action. In a letter dated April 12, 1973, Dr. Anderson informed Ms. Brown that he would recommend termination of her contract because her pregnancy "cannot be viewed as appropriate moral conduct for a member of our professional staff." The

NEOC, in investigating the sex discrimination charge, asked the Board for a copy of its policy on immoral conduct. In response, the Board submitted a copy of section 79–1260. In a brief submitted to the NEOC, the Board stated that, although section 79–1260 applies only to tenured teachers,

> the grounds for a mid-year termination of a probationary teacher are the same as those set forth in Section 79–1260, for the termination of a tenured teacher.

As the litigation progressed, the Board further clarified its reasoning. It now appears that the Board's concern is not with the morality of Ms. Brown's conduct, but rather with her relationship with students and parents. At the trial before the federal district court, Dr. Anderson testified:

> [A] part of our obligation and responsibility to this community, the parents and the youngsters, is to have the best teachers we can find; teachers who will present what we feel is the right image and example to youngsters under their direction.
>
>    \*    \*    \*    \*  -    \*    \*
>
> We feel, of course, that the schools do have a responsibility \* \* \* sustaining the value system as accepted in society and maybe bolstering it in areas where there is some weakness.

The Board dismissed Ms. Brown because they felt the presence of an obviously pregnant, unmarried teacher in the classroom would be a harmful influence on the students. Regardless of the merits of this reasoning, the Board in confirming Ms. Brown's discharge following the 1975 hearing focused upon Ms. Brown's likely relationship with her students in light of her pregnant condition, not upon any alleged immorality. Because the Board does not now rely on the statute as the grounds for dismissal, we need not reach the issue of its alleged vagueness.

We now turn to the challenges to the termination of Ms. Brown's employment. While the Board was free to terminate her employment without cause at the end of her contract period, Neb.Rev.Stat. § 79–1256 (1976), it could not do so for a constitutionally impermissible reason. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *see Frazier v. Curators of the University of Missouri,* 495 F.2d 1149 (8th Cir. 1974). Ms. Brown argues that but for her pregnancy the Board would have renewed her contract when she eventually furnished the transcript. By basing the nonrenewal on her pregnancy, she argues, the Board violated her rights to privacy, freedom of association, and equal protection. We do not agree with this theory. When the Board voted to terminate the contract, it had already informed Ms. Brown that her contract would not be renewed for the following year because of her failure to provide a college transcript as required by state law. This was a legitimate reason unrelated to her pregnancy. This situation presents a question of causation similar to that addressed by the Supreme Court in *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). There the Court declined to "place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." *Id.* at 285, 97 S.Ct. at 575. Here, too, we cannot predict that the Board would have renewed Ms. Brown's contract after she furnished her transcript had she not been pregnant. After the Board's decision not to renew her contract, Ms. Brown possessed only a contract right to teach for the balance of the school year. We cannot improve her position merely because she has engaged in conduct allegedly protected by the Constitution. We therefore do not reach the question whether the Board declined to renew her contract for constitutionally impermissible reasons.

■ Ms. Brown's one-year contract created a property interest, *see generally Perry v. Sindermann, supra,* 408 U.S. at 599–603, 92 S.Ct. 2694, which was subject to due process protections, both procedural and substantive; *Easter v. Olson,* 552 F.2d 252, 253 (8th Cir. 1977), *Buhr v. Buffalo Public School District No. 38,* 509 F.2d 1196 (8th Cir. 1974); *Fisher v. Snyder,* 476 F.2d 375

(8th Cir. 1973). We do not agree with the district court's conclusion that Ms. Brown's right to due process was protected by the post-termination hearing conducted in 1975.

Due process requires at least notice and an opportunity to be heard. *Goss v. Lopez,* 419 U.S. 565, 581, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Sullivan v. Meade Independent School District No. 101,* 530 F.2d 799, 806 (8th Cir. 1976); *Strickland v. Inlow,* 519 F.2d 744, 746 (8th Cir. 1975). The opportunity to be heard must be provided "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Generally, a hearing must be conducted *before* a right is terminated. *Board of Regents v. Roth,* 408 U.S. 564, 570 n. 7, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Fuentes v. Shevin,* 407 U.S. 67, 80–84, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). As the Supreme Court stressed in *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971),

> it is fundamental that except in emergency situations * * * due process requires that when a State seeks to terminate an interest * * * it must afford "notice and opportunity for hearing appropriate to the nature of the case" *before* the termination becomes effective. [Emphasis in original.]

Courts have allowed post-termination hearings when the delay merely caused a loss of money during the period of the delay. In *Mathews v. Eldridge, supra,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, the Supreme Court approved the Social Security Administration's practice of conducting hearings on the termination of disability benefits after the termination. In *Wellner v. Minnesota State Junior College Board,* 487 F.2d 153 (8th Cir. 1973), after ordering a hearing on the earlier termination of a teacher, we ordered the defendant to pay the plaintiff the salary he would have received had he not been unlawfully discharged.

In contrast, in the present case the lack of a pre-termination hearing did more than merely deprive Ms. Brown of her salary. The two-year delay substantially handicapped her ability to protect her interests. At the 1975 hearing, she suffered the difficult burden of seeking a reversal of an administrative decision and two years' worth of consequences flowing from that decision. Moreover, the delay itself served virtually to destroy any possibility of reaching a compromise solution less harsh than dismissal. Alternatives other than dismissal existed at the time of original dismissal. A leave of absence for the remainder of the term or a transfer to a nonteaching position could have alleviated the Board's concern for the moral welfare of the students,[1] while affording some protection for Ms. Brown's rights. These options were no longer available at the time of the hearing in 1975. Because the delay in obtaining a hearing hampered Ms. Brown in vindicating her rights, the post-termination hearing did not satisfy the requirements of due process. *See Armstrong v. Manzo, supra,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62.

Although Ms. Brown's brief does not directly attack the Board's failure to grant her a pretermination hearing, she does place emphasis upon the Board's failure to consider alternatives to discharge such as granting her a leave of absence for maternity reasons or assigning her to a nonteaching position, noting that the "school board never seriously considered these alternatives to outright dismissal." We think

---

1. At the 1975 hearing the Board objected to Ms. Brown's *presence* in the classroom *during her pregnancy.* The record indicates that the Board has not viewed child bearing by an unmarried woman as an absolute job disqualification. Mothers of illegitimate children have served the school district in teaching and nonteaching positions. Pregnant unmarried women also have served in nonteaching jobs.

these factors implicate substantive due process considerations. *See Sullivan v. Meade Independent School District No. 101, supra,* 530 F.2d 799.[2] Notwithstanding Ms. Brown's failure to object to the hearing procedures on this appeal, the merits of her complaints could only be evaluated by the school board at a pre-termination hearing. Thus, we must conclude that the post-termination hearing in this case could not fulfill Ms. Brown's entitlement to due process of law under the fourteenth amendment.

We conclude that the summary termination of Ms. Brown's contract was unlawful. The Board should pay her the balance of her salary under the contract and should remove from her personnel records any reference to the termination of her contract on moral grounds or on account of her pregnancy. In addition, she is entitled to an award of attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976.[3]

The monetary award represents an equitable restitution of salary unlawfully withheld, *see Owen v. City of Independence,* 560 F.2d 925 (8th Cir. 1977); *Wellner v. Minnesota State Junior College Board, supra,* 487 F.2d at 156–57, and constitutes a liability of the members of the Board in their official capacities, payable by the school district.[4] We therefore need not decide whether the Board members acted in good faith, since the qualified immunity enunciated in *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), applies only to damages, not to equitable relief. *Id.* at 314–15 n. 6, 95 S.Ct. 992; *see Owen v. City of Independence, supra,* 560 F.2d 925.

We reverse and vacate the judgment and remand this case to the district court for entry of a money judgment consistent with this opinion and for taxation of attorney's fees in the federal district court as may be appropriate. We award appellant the sum of $1,500 attorney's fees on appeal, together with her taxable costs and disbursements.

MILLER, Judge, concurring.

I fully concur in the result reached by Judge Bright. However, the dissenting opinion points up the problem I have in premising the decision on denial of procedural due process, namely: whether this issue is fairly raised, even indirectly, on this appeal. If it is, Judge Bright's disposition of the issue is eminently perceptive and correct.

I am satisfied that the decision can properly rest on invidious (termination of employment) discrimination by reason of sex, contrary to the Fourteenth Amendment. The Board of Education's standard of "morality" is undefined, and, granted that there is a rational connection between a teacher's unwed pregnancy and the Board's interest in conserving marital values before the students, the standard does not appear to have been uniformly applied. Thus, the Assistant Superintendent, Dr. Anderson, testified that the School District of Omaha has hired as teachers women who have had pregnancies and children out of wedlock and has retained women employees who have become pregnant out of wedlock. Appellant's evidence shows that the Board has never terminated the employment of any male single teacher because of putative fatherhood, so that the brunt of the undefined "morality" standard's application appears to fall on the female gender. *See Jacobs v. Martin Sweets Co.,* 550 F.2d 364 (6th Cir. 1977).

2. For example, in *Sullivan.* the board provided the teacher a timely hearing and made repeated efforts to offer compromise solutions as alternatives to dismissal. 530 F.2d at 806–07.

3. 42 U.S.C.A. § 1988 (Supp.1977). The Act may be applied retroactively in a case in which an appeal was pending on the effective date of the Act. *Gay Lib v. University of Missouri,* 558 F.2d 848 (8th Cir. 1977); *Finney v. Hutto,* 548 F.2d 740, 742 (8th Cir. 1977), *petition for cert.* granted, —— U.S. ——, 98 S.Ct. 295, 54 L.Ed.2d 187 (1977). The Act became effective on October 19, 1976. The notice of appeal in this case was filed on September 27, 1976.

4. The district court properly dismissed the action against the school administrators for they neither took part in the decision to terminate Ms. Brown's contract nor had the power to do so.

Moreover, I am persuaded that the "business necessity" of the Board[5] to conserve marital values before the students could have been accomplished just as well by action other than termination of employment, such as: (1) requesting Brown to take maternity leave; (2) asking Brown to get married; or (3) transferring Brown to a non-teaching position (Dr. Anderson testified that staff members with no direct personal contact with the students do not "have an impact upon the youngsters developing their value judgments"). Evidence of the Board's failure to pursue such reasonable alternatives because of Brown's unwed pregnancy establishes a prima facie case of sex discrimination. *Robinson v. Lorillard Corp.,* 444 F.2d 791, 798 (4th Cir.), *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971).[6]

MATTHES, Senior Circuit Judge, dissenting.

I respectfully dissent.

I cannot agree with Judge Bright that the disposition of this case should turn on the issue of Ms. Brown's right to a pretermination hearing. Judge Bright concedes that "Ms. Brown's brief does not directly attack the Board's failure to grant her a pretermination hearing," and I cannot find any indirect route by which this issue may be termed fairly raised. Indeed, in response to close questioning during oral argument, Ms. Brown's counsel expressly disavowed any reliance on the consequences of the Board's failure to hold a pretermination hearing.

It is ordinarily the rule in this court that issues not pressed on appeal will be considered abandoned. *Sartin v. Commissioner of Public Safety,* 535 F.2d 430 (8th Cir. 1976); *Reserve Mining Co. v. Environmental Protection Agency,* 514 F.2d 492, 532 (8th Cir. 1975); *Smith v. American Guild of Variety Artists,* 368 F.2d 511 (8th Cir. 1966), *cert. denied,* 387 U.S. 931, 87 S.Ct. 2052, 18 L.Ed.2d 991 (1967). Where, as here, the

court proceeds on a theory not advanced by the parties, "the litigants are not afforded a fair opportunity to meet the issue." *Doe v. Poelker,* 515 F.2d 541, 549 (8th Cir. 1975) (Van Oosterhout, J., dissenting). I would hold that Ms. Brown has abandoned the issue of her right to a pretermination hearing. Further, in my view, Ms. Brown's abandonment of this issue largely undercuts her complaint that the Board failed to adequately pursue alternatives to dismissal.

Neither can I agree with Judge Miller that the action of the Board may be characterized as invidious sex discrimination. Assistant Superintendent Anderson's testimony, on which Judge Miller relies, does not in my view show the unfair application of a standard of conduct. It is true that the Board might hire as a teacher a person who had previously had a child out of wedlock, and might retain certain employees (apparently individuals holding nonteaching positions) who have become marriageless parents during the course of their employment. However, Dr. Anderson's testimony indicated that these decisions rested on a facts and circumstances appraisal of the potential for harmful communication (verbal and nonverbal) between the employee and the students. The conduct of the Board in this case was not focused upon an abstract standard of morality; its sole concern was the welfare of its students. This approach is not invidious sex discrimination, but rather an attempt to bring some measure of sophistication to a delicate problem.

I do not propose to comment in any detail on the merits of the underlying controversy. However, I must note my agreement with the district court's judgment that "[t]here is a rational connection between the plaintiff's pregnancy out of wedlock and the school Board's interest in conserving marital values, when acts probably destructive of those values are revealed, verbally or nonverbally, in the classroom." *Brown v. Bathke,* 416 F.Supp. 1194, 1198 (D.Neb. 1976). *See Adler v. Board of Education,*

---

**5.** *See Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158, 164 (1971); *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544, 91 S.Ct. 496, 498, 27 L.Ed.2d 613, 615 (1971).

**6.** Although *Lorillard* was a racial discrimination case, its reasoning is clearly applicable to a sex discrimination case.

342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952). Further, I fully concur with the district court's judgment that Ms. Brown's interests in "determining her own familial relationships and associating with whom she chooses do not outweigh the interests of the school in providing the kind of teachers it chooses for imparting social values and educational subject matter to junior high school students." *Brown v. Bathke, supra* at 1200; *see Sullivan v. Meade Independent School District,* 530 F.2d 799 (8th Cir. 1976).

We must be mindful that it is "not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975); *Wishart v. McDonald,* 500 F.2d 1110 (1st Cir. 1974). It is simply inconceivable to me that the judgments made by the school administrators here are constitutionally forbidden.

In my view, the opinion of the district court is soundly reasoned in all material respects and I would affirm on the basis thereof.