Arthur N. ECONOMOU and The American Board of Trade Service Corporation, Plaintiffs,

v.

Jamie A. WADE, Individually, and as Superintendent of Securities; Department of Insurance, State of Iowa and Herbert W. Anderson as Commissioner of the Insurance Department of Iowa, Defendants.

Civ. No. 78–83–2.

United States District Court, S. D. Iowa, C. D.

Sept. 30, 1980.

Richard A. Miller, New York City, for plaintiffs.

John R. Perkins, J. Eric Heintz, Asst. Attys. Gen., Des Moines, Iowa, for defendants.

O'BRIEN, District Judge.

The Court has before it defendants' motion for summary judgment and plaintiffs' cross-motion for partial summary judgment. The Court held an oral hearing on these motions. After fully considering this matter, the Court grants defendants partial summary judgment and denies plaintiffs' motion for partial summary judgment.

The plaintiffs involved herein are The American Board of Trade Service Corporation (ABT Service Corp.), which is a Delaware corporation with offices at 286 Fifth Avenue, New York, New York, and Arthur N. Economou, president of ABT Service Corp.

ABT Service Corp. acts as a specialist on an exchange marketplace, the American Board of Trade, Inc. (ABT, Inc.), a membership organization on which "spot" commodities are traded. ABT Service Corp.'s principal business is to purchase and sell commodities as a "specialist" for ABT, Inc. Incidental to its activities in the commodities business, ABT Service Corp. sells commercial paper, which is the subject matter of this litigation.

Defendant Jamie A. Wade is the Superintendent of Securities for the Insurance De-

partment of Iowa. Also named as a defendant is Herbert W. Anderson, who at all relevant times involved herein was the Commissioner of the Insurance Department of Iowa.[1]

Plaintiffs' complaint is in three counts. It seeks declaratory, injunctive and damage relief with respect to both the constitutionality and, on the facts of this case, the enforcement of § 502.604, Iowa Code (1977).[2] The litigation was prompted by a September 28, 1977 issuance of a cease and desist order against plaintiffs by Defendant Superintendent of Securities Wade without prior notice or hearing in accordance with § 502.604 which does not provide for such notice and hearing. Said order directed plaintiffs to cease the sale of securities in Iowa without registration in violation of § 502.201, Iowa Code (1977), and to cease engaging in other unlawful practices under the Iowa Uniform Securities Act. This action was commenced one week after the Iowa District Court for Polk County issued a temporary injunction enjoining the sale or offering for sale of securities by Plaintiff Economou. See § 502.604(2), Iowa Code (1977).

On December 6, 1978, the Iowa District Court in and for Polk County dismissed the temporary injunction and held it null and void. The Iowa District Court further ordered that the cease and desist order issued by Defendant Wade be set aside and held null and void.

Thereafter, a hearing was scheduled by the Iowa Securities Division to decide whether or not another cease and desist order should be issued. Prior notice of this hearing was provided to plaintiff. However, plaintiffs did not appear at the hearing. Thereafter a cease and desist order was entered by the hearing officer, Tony Schrader, ordering plaintiffs to cease and desist from the "issuance, sale, offer for sale, negotiation, promotion, advertisement, or distribution of . . . 'commercial paper'."

■ In deciding this matter, the Court first notes the opinion of Judge Hanson dated August 17, 1978 wherein Judge Hanson overruled defendants' motion to dismiss for failure to state a claim. In that order Judge Hanson at page 5 states: "At a minimum plaintiffs' property interests would appear to be implicated by an administrative order which directs them to cease certain allegedly unlawful business practices. See Paul v. Davis, 424 U.S. 693, 701–12 [, 96 S.Ct. 1155, 1160–65, 47 L.Ed.2d 405] (1976); Mathews v. Eldridge, 424 U.S. 319 [96 S.Ct. 893, 47 L.Ed.2d 18] (1976); Goss v. Lopez, 419 U.S. 565, 572–76 [, 95 S.Ct. 729, 735–37, 42 L.Ed.2d 725] (1975); Board of Regents v. Roth, 408 U.S. 564, 569–78 [, 92 S.Ct. 2701, 2705–09, 33 L.Ed.2d 548] (1972). Consequently plaintiffs are entitled to procedural due process in connection with a finding that they have violated state security law. The question here is when does due process attach. See Mathews, supra [424 U.S.] at 332–35 [, 96 S.Ct. at 901–03]."

In examining the cases set forth by Judge Hanson, the Court agrees that at a minimum plaintiffs' property interests would appear to be implicated by the origi-

1. Subsequent to the commencement of this suit, Mr. Anderson died. Defendants' counsel filed a suggestion on the record of Mr. Anderson's death and moved to have his name stricken from this action. This motion has not yet been ruled on by the Court and for purposes of deciding this matter, it is unnecessary to address said motion.

2. 502.604. *Cease and desist orders—injunctions.* Whenever it appears to the administrator that any person has engaged or is about to engage in any act or practice constituting a violation of any provision of this chapter or any rule or order thereunder, the administrator may:

1. Issue an order directed at any such person requiring such person to cease and desist from engaging in such act or practice.

2. Bring an action in the district court to enjoin the acts or practices and to enforce compliance with this chapter or any rule or order hereunder. Upon a proper showing a permanent or temporary injunction, restraining order, or writ of mandamus shall be granted and a receiver or conservator may be appointed for the defendant or the defendant's assets. The administrator shall not be required to post a bond.

nal cease and desist order of September 28, 1977. Accordingly, plaintiffs are entitled to certain due process rights. The amount of due process to which plaintiffs are entitled is for this Court's determination.

In fully examining this matter and relevant case law, the Court concludes that due process does not call for a hearing prior to the issuance of a cease and desist order. The Court first notes that the procedures used by the Securities Division in the issuance of the original cease and desist order were in compliance with the provisions of Iowa Code Chapter 502. Furthermore, *although Chapter 502 does not provide for notice and an opportunity for a hearing, prior to the issuance of a cease and desist order, the cease and desist order did provide plaintiffs with notice of their opportunity for a hearing to be set if requested within fifteen days of the receipt of the request.* Plaintiffs never requested such a hearing.

Plaintiffs contend that because Chapter 502 does not require a fact-finding hearing on the allegations contained in the cease and desist order, it is unconstitutional on its face. In this light, plaintiffs further argue that the cease and desist order places them in an untenable position in that if they disobey the cease and desist order they are subject to criminal liability under subsection 502.605(1).[3]

In response, defendants contend plaintiffs were not placed in jeopardy of committing a criminal violation as the only means of contesting the application of the cease and desist order. Defendants argue there were a number of opportunities to test the order, but these opportunities were ignored by plaintiffs. Section 502.606 provides for judicial review of all actions of the administrator pursuant to the Iowa Administrative Procedure Act, Chapter 17A, Code of Iowa. Defendants further argue the application of § 502.604(1) by Defendant Wade and the Securities Division also provided plaintiffs

an opportunity to test the order. However, plaintiffs failed to request a hearing to challenge the order. Following such a hearing, plaintiffs could have appealed any ruling of the hearing officer to the district court of Iowa pursuant to § 502.606. Defendants further argue that the Securities Division has sought civil rather than criminal enforcement of cease and desist orders and a hearing on an injunction pursuant to § 502.604(2)[4] would also provide plaintiffs an opportunity to challenge the order.

The Court agrees with the arguments made by defendants. A hearing (as provided in the cease and desist order) before an impartial trier of fact and judicial review provide adequate opportunities for resisting a cease and desist order and further operate as safeguards against the violation of constitutionally-protected rights. The Court so concludes, having in mind the fact that the State has a very strong interest in quick action to protect the public from sales of securities which may violate Chapter 502. A large volume of securities can be sold in a relatively short period of time. The interest of protecting the public, as weighed against plaintiffs' interest in selling the securities, is paramount. Therefore, any damage to plaintiffs under these circumstances is outweighed by the public's interest of protection from possible illegal or even fraudulent sales of securities.[5]

The Court further concludes that the timing of the hearing was proper. Despite the fact that the Iowa statute does not provide for a hearing subsequent to the cease and desist order, the cease and desist order did provide plaintiffs with an opportunity to be heard within fifteen days if they so requested. The origin of the right to request a hearing "presumably is the result of administrative rule rather than statutory command. *See* § 502.607, Iowa Code (1977). Its exact origin, however, is not presently clear to the Court." Judge Hanson's order,

---

**3.** § 502.605(1) provides:
    1. Any person who willfully and knowingly violates any provision of this chapter, or any rule or order under this chapter, shall be guilty of a class "D" felony.

**4.** See footnote 2 for the provisions of this statute.

**5.** See footnote 7, *infra* for further discussion of the public's interest.

*supra* at 4.[6] Plaintiffs acted at their own peril by not accepting the due process provided by the State.

As stated in *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1975): "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (citations omitted). The Court in *Mathews* at 334–35, 96 S.Ct. at 902–03 also stated:

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (Citations omitted.) ... [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

In balancing these factors, as the Court has to some degree already done in the earlier portion of this order, the Court concludes the facts of this matter do not call for a hearing prior to the issuance of the cease and desist order. The private interests of plaintiffs do not outweigh the State's interest in protection of the public[7] and as such, due process, in being flexible to this particular situation, is satisfied by a post cease and desist order hearing.

As recognized and accepted by the Eighth Circuit Court of Appeals in *Brown v. Bathke*, 566 F.2d 588, 592 (8th Cir. 1977): "Courts have allowed post-termination hearings when the delay merely caused a loss of money during the period of the delay."

Because plaintiffs were provided the opportunity for a post cease and desist order hearing, their due process rights were not violated by defendants. The Court concludes the procedures followed by plaintiffs and afforded to defendants in the instant case adequately protected the plaintiffs' constitutional interests.

The Court further concludes that § 502.-604 as applied by defendants did not deny the plaintiffs' due process under the 14th Amendment since the Defendant Wade did not act arbitrarily, capriciously, or in a biased manner. The Court draws this conclusion based on the fact that an investigation of alleged violations of §§ 502.201[8] and 502.301[9] requires a review of the files

---

**6.** This matter would be in a different posture if in fact a hearing was not provided to plaintiffs. The Court does have some concern that the statute does not provide for a hearing either before or after the issuance of a cease and desist order. (*See* Minn.Stat. § 80A.21 which provides for a hearing, if requested, within seven days of the issuance of a cease and desist order.) Relying merely on an administrative rule instead of a statute may in the future cause problems for the state if in fact the administrative rule is not followed and a hearing is not provided. However, because in this matter, opportunity for a hearing was provided, within fifteen days of the cease and desist order, if requested by plaintiffs, the Court concludes plaintiffs received the necessary due process. The Court presumes the opportunity for a hearing, as set forth in the cease and desist order, is the result of administrative rule.

**7.** In ordering the issuance of a cease and desist order, the Securities Division of Iowa is attempting to protect the public from fraudulent security schemes. One detriment of having a hearing prior to the issuance of a cease and desist order is the delay associated with the hearing. A large amount of securities can exchange hands in a short period of time. Any delay may benefit the seller of the securities, but may be detrimental to the public. Furthermore, the Court believes this delay could become a tactic by fraudulent sellers to enable them to continue their activities with the State of Iowa pending the outcome of a hearing.

**8.** § 502.201 provides:

502.201 Registration requirement. It is unlawful for any person to offer or sell any security in this state unless

1. It is registered under this chapter; or
2. The security or transaction is exempted under sections 502.202 or 502.203.

**9.** § 502.301 provides:

502.301 Registration requirement.

1. It is unlawful for any person to transact business in this state as a broker-dealer or agent unless registered under this chapter.

maintained by the Security Division. These investigative procedures are followed in all instances. Under Chapter 502, certain registration requirements are necessary prior to the selling of securities in Iowa. If, after reviewing the information filed with the Securities Division, it is determined that certain omissions of material facts or misstatements are made, the Securities Division may enter a cease and desist order. Accordingly, because Defendant Wade followed these ordinary investigative procedures of the Securities Division and thereby concluded that plaintiffs were violating certain provisions of Chapter 502, his conduct was not arbitrary, capricious or biased.

■ The final issue which the Court decides and on which Defendant Wade moves for summary judgment is whether or not Defendant Wade is entitled to absolute immunity. The Court has been faced with absolute immunity issue on several prior occasions and therefore is well aware of the principle and applicable law. In particular, Defendant Wade relies upon *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition that he is absolutely immune from prosecution. The Court recently stated:

> However, a prosecutor is not afforded absolute immunity for conduct clearly beyond the proper exercise of his authority which exceeds any possible construction of power granted to his office. *See Martin v. Merola*, 532 F.2d 191, 195 (2d Cir. 1976); *Celander v. Lucas Cty., Iowa, et al.*, 78–330–2 (S.D.Iowa, filed May 30, 1980). *Smith v. Updegraff*, 79–449–E (S.D.Iowa, filed September 2, 1980):

Because there is a factual dispute about whether Defendant Wade was acting beyond his scope of authority, this Court is unable to grant Defendant Wade's motion for summary judgment. The Court further notes the case of *Pfizer v. International Rectifier Corp.*, 538 F.2d 180 (8th Cir. 1976), which held:

> Summary judgment is notoriously inappropriate for determination of claims in which issues if intent, good faith and other subjective failings play dominant roles.

The Court believes that in this instance, Defendant Wade's good faith, intent and other subjective feelings play a dominant role in whether or not he was acting beyond the scope of his authority in issuing the cease and desist order. For this further reason, the Court is unable to sustain Defendant Wade's motion for summary judgment.

Based upon all the foregoing reasons,

IT IS HEREBY ORDERED that defendants are granted partial summary judgment in that the Court has found that Iowa Code § 502.604 is constitutional and that plaintiffs have not been denied due process under the 14th Amendment.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is denied in all other respects.

IT IS FURTHER ORDERED that plaintiffs' motion for partial summary judgment is denied.

IT IS FURTHER ORDERED that the Clerk of Court is directed to enter judgment consistent with this order pursuant to Fed.R.Civ.P. 54(b) in that the Court has determined that there is no just reason for

---

2. It is unlawful for any broker-dealer or issuer to employ an agent in this state unless the agent is registered. The registration of an agent is not effective during any period when the agent is not associated with a specified broker-dealer registered under this chapter or a specified issuer. Unless permitted by order of the administrator, no agent shall at any time represent more than one broker-dealer or issuer, except that where organizations affiliated by direct or indirect common control are registered as broker-dealers or are issuers of securities registered under this chapter, an agent may represent any such organization. When an agent begins or terminates employment with a broker-dealer or issuer or begins or terminates the activities which makes such person an agent, the agent as well as the broker-dealer or issuer shall promptly notify the administrator.

3. Every registration shall expire on the last day of September in each year.

delay and therefore a judgment should be entered as set out above.